**MAISY W., Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, OFFICE OF CHILDREN'S SERVICES, Appellee.**

**No. S–12704.**

Supreme Court of Alaska.

Feb. 1, 2008.

Paul J. Ewers, Law Office of Paul Ewers, Fairbanks, for Appellant.

Megan R. Webb, Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, EASTAUGH and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

A mother appeals the superior court's judgment terminating her parental rights to her three oldest children. The superior court found that the children were in need of

aid based on abandonment, mental injury, neglect, and parental substance abuse; that the mother had failed to remedy the conduct that placed the children at risk; that the state had made sufficient efforts to try to help the family; and that terminating the mother's parental rights was in the children's best interests. The mother challenges the findings that she failed to remedy any problematic conduct and that the state made sufficient efforts to reunify her family. We affirm the termination of the mother's parental rights because the record contains sufficient evidence of her failure to remedy her conduct and of the state's many efforts to help the family.

## II. FACTS AND PROCEEDINGS

Maisy W. has four children by three fathers.[1] The three oldest children are the subject of this appeal. Frank R. is the father of Bart W., who was born in 1996. Ralph M. is the father of Sophie M., born in 2001. Rick M. is the father of Rickie M., born in 2003. Rick is also the father of another child who is not involved in this case. The children are affiliated through their mother with the Native Village of Fort Yukon.

Maisy's childhood was difficult. She was verbally and sexually abused. She witnessed domestic violence. She has a history of substance abuse involving marijuana, alcohol, and cocaine. At the age of fifteen, she became pregnant and dropped out of high school. She later earned a GED. Maisy's arrests include driving with a suspended license, consuming alcohol as a minor, assault, and misconduct involving a controlled substance.

The Office of Children's Services (OCS) received its first report of harm alleging neglect by Maisy in May 1997. More reports of harm followed, for allegations such as neglect and substance abuse, in July 1997, October 1997, sometime in 2000, January 2003, January 2004, and February 2004. The February 2004 report was in response to an incident in which screaming and crying were heard coming from Maisy's apartment. Police officers who responded found Maisy with a "swelling bump" on her forehead. OCS became officially involved after the February 2004 incident; following an investigation, OCS set up a case plan for Maisy to address neglect, substance abuse, domestic violence, and other issues. Maisy did not adhere to the case plan; for example, although transportation services were offered, she completed only one of ten urinalysis (UA) tests, and the one she completed was diluted.

On July 3, 2004, police officers responded to a fight between Maisy and an armed, intoxicated Rick. On July 14, based on that incident, OCS petitioned for temporary custody of the children but did not remove them.[2] On July 26 judicial services officers attempted to serve Maisy with the custody petition paperwork. According to the officers, the intoxicated man who opened the door had difficulty waking Maisy, who did eventually stagger to the door. The judicial services officers handed Maisy the paperwork; she threw it on the ground, and the officers called OCS for assistance. OCS social workers who arrived reported Maisy slurring her speech, screaming, cursing, and making threats, and believed her to be too intoxicated to care for her children. OCS took the children, who were dirty and hungry, into emergency custody. OCS then filed an emergency petition for temporary custody, which the superior court granted. In November 2004, per Maisy's stipulation, the superior court adjudicated the children to be in need of aid and gave OCS temporary custody.

After it took emergency custody of the children, OCS set up case plans for Rick and Maisy. Rick's case plan included provisions for anger management and parenting classes, a substance abuse assessment, random UAs, and visitation. Maisy's case plan included provisions for alternatives-to-violence and parenting classes, an alcohol and drug assessment, random UAs, and visitation. Mai-

---

1. We use pseudonyms for all family members.

2. Rick was later charged with assault. He pleaded no contest and, after failing to complete the required domestic violence program, served a jail sentence.

sy sporadically attended the classes. OCS paid for Maisy's substance abuse assessment and Maisy began the recommended treatment program; it is unclear whether she finished it. Maisy submitted to UAs, and the results indicated that she was staying sober. OCS arranged for Maisy to visit with her children regularly and offered transportation assistance. Although she often arrived late, Maisy did visit with the children.

Based on her progress, OCS returned the children to Maisy in June 2005 for a trial home visit. The understanding was that Maisy would continue with her case plan. A surprise home visit by OCS on July 14 went well, but a report of harm prompted another home visit on August 3. At this visit, Maisy's eyes were bloodshot and she had a cut on her face. She angrily refused to participate in a UA despite the social worker's offer of transportation to and from the test location and childcare during the test. At a visit on September 6, Maisy's eyes were again bloodshot and her cheeks appeared bruised. She was belligerent toward social workers and refused to submit to a UA but did agree to sign up for services through Ch'eghutsen', a Native organization. The next day, a Tanana Chiefs Conference (TCC) social worker visited Maisy to set up services at Ch'eghutsen'. The social worker reported that Maisy refused services and that she looked worse than she had the day before. At a follow-up visit on September 16, Maisy was again belligerent and refused to complete a UA. She also called the police and requested that the OCS social workers be removed from her property.

The trial home visit ended on September 17, 2005, when the children were again removed because social workers and the children's guardian ad litem suspected Maisy of substance abuse. The suspicions were based on Maisy's appearance during home visits, and her reluctance and later refusal to submit to UAs. According to OCS, removal was also necessary because Maisy was not attending classes; Bart was not attending school; Maisy would not allow OCS to interview the children; and Maisy continued to be involved with Rick, who was not complying with his case plan.

In January 2006 the superior court extended OCS's temporary custody of the children even though OCS conceded that between June and September 2005, it had not made active efforts to reunify the family. OCS then updated Maisy's case plan. The new plan required that Maisy participate in random UAs, attend parenting classes, visit regularly with her children, and maintain a home free from violence. The updated case plan also provided that OCS would assist Maisy with housing and that TCC and Ch'eghutsen' would help her find employment. Maisy did not comply with the new case plan: she failed to complete UAs despite Ch'eghutsen's offers of transportation assistance; she visited with her children only sporadically; and she moved several times but refused to give OCS updated contact information. OCS petitioned to terminate her parental rights.

Superior Court Judge Randy M. Olsen presided over the termination trial, which took place over four days in March 2007. The state noted that over the years, OCS had created and updated multiple case plans for the family, including in July 2004, August 2004, January 2005, July 2005, September 2005, January 2006, April 2006, May 2006, July 2006, and August 2006. The state argued that Maisy failed to comply with her case plans despite encouragement from social workers, multiple referrals to social service organizations (both those serving the general population and those focusing on Native communities), advice regarding phone service, and offers for help with funding, transportation, and the like. The state presented evidence of harm to the children, especially Bart, who had been diagnosed with post-traumatic stress disorder and as severely emotionally disturbed. Maisy argued that the state had not been sufficiently involved, especially given that her case had been passed from caseworker to caseworker, and that she had in fact completed most of the case plan requirements. At the conclusion of trial, the superior court stated, "I really don't adopt and I don't believe [Maisy's] testimony."

In April 2007 the superior court entered an order terminating the parental rights of Mai-

sy and the three fathers to the three children. The superior court later denied Maisy's motion for reconsideration. In its Findings and Order Terminating Parental Rights After Trial, dated May 2007 and effective March 2007, the superior court found by clear and convincing evidence that the children were in need of aid based on abandonment, mental injury, neglect, and parental substance abuse; that the parents failed to remedy the conduct that placed the children at risk; that the state made reasonable efforts to provide the family with support services; and that the state made active efforts to prevent the breakup of the Indian family. The superior court also found beyond a reasonable doubt that the children would suffer serious harm if returned to a parent's home and that it was in the children's best interests for parental rights to be terminated.

Maisy appeals.

## III. DISCUSSION

Maisy initially argues that Bart, Sophie, and Rickie are not in need of aid, but she concedes the issue in her reply brief. We thus affirm the superior court's finding that the children are in need of aid. Maisy also argues that she successfully remedied any problematic conduct and that the state failed to make active efforts to prevent the breakup of the family. We disagree.

### A. Standard of Review

▮▮▮ In a case involving the termination of parental rights, we review a superior court's findings of fact for clear error.[3] Findings are clearly erroneous if, after reviewing the record in the light most favor-

able to the prevailing party, we are left with "a definite and firm conviction that a mistake has been made."[4] Conflicting evidence is generally insufficient to overturn the superior court,[5] and we will not reweigh evidence when the record provides clear support for the superior court's ruling.[6] Whether the superior court's findings satisfy statutory requirements and the Child in Need of Aid (CINA) Rules[7] is a question of law that we review de novo.[8] Whether the state complied with the "active efforts" requirement of the Indian Child Welfare Act (ICWA) is a mixed question of law and fact.[9]

### B. Maisy Failed To Remedy Her Conduct.

▮▮▮ Parental rights may be terminated only if the state shows, by clear and convincing evidence, that a parent failed to remedy the conduct that placed the child at risk.[10] Parental rights therefore may be terminated only if a parent "has not remedied the conduct or conditions in the home that place the child at substantial risk of harm" or "has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury."[11] Maisy argues that she successfully remedied any conduct or conditions that may have placed her children at risk. The state contends that Maisy waived this issue by failing to brief it adequately.

We have recognized that a party waives appellate consideration of a claim by briefing

---

3. *Brynna B. v. State, Dep't of Health & Soc. Servs.*, 88 P.3d 527, 529 (Alaska 2004) (citing *A.B. v. State, Dep't of Health & Soc. Servs.*, 7 P.3d 946, 950 (Alaska 2000)).

4. *Id.* (quoting *A.B.*, 7 P.3d at 950).

5. *Id.* (citing *Martin N. v. State, Dep't of Health & Soc. Servs.*, 79 P.3d 50, 53 (Alaska 2003)).

6. *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 214 (Alaska 2000).

7. *See Martin N.*, 79 P.3d at 53 (citing *V.S.B. v. State, Dep't of Health & Soc. Servs.*, 45 P.3d 1198, 1203 (Alaska 2002)).

8. *See Brynna B.*, 88 P.3d at 529.

9. *T.F. v. State, Dep't of Health & Soc. Servs.*, 26 P.3d 1089, 1092 (Alaska 2001).

10. AS 47.10.088(a); CINA Rule 18(c)(1). Clear and convincing evidence is evidence more than a preponderance but less than proof beyond a reasonable doubt. *Brynna B.*, 88 P.3d at 530 n. 12.

11. AS 47.10.088(a); CINA Rule 18(c)(1).

it inadequately.[12] Thus, we have stated that where a point "is given only a cursory statement in the argument portion of the brief, the point will not be considered on appeal."[13] Although the arguments are conflated in her opening brief, Maisy did address her attempts to remedy the questionable conduct. Moreover, her reply brief directly addressed her efforts. Accordingly, we conclude that Maisy did not waive the claim that she remedied the conduct.

The larger question is whether the superior court erred in finding that Maisy failed to remedy her conduct sufficiently. We conclude that the superior court did not err because the record contains ample evidence of Maisy's failure to comply with her case plans. Maisy completed only one of the ten UAs required by her February 2004 case plan, and that test was diluted. The reports of harm continued after the trial home visit began in June 2005, and social workers conducting home visits that summer reported that Maisy's eyes were bloodshot on several occasions; that she appeared to have been involved in violent altercations; that she refused to complete UAs; that she refused services; that she failed to attend classes or ensure that Bart went to school; that she refused to cooperate with OCS; and that, by allowing Rick into her home, she failed to maintain a violence-free home for her children. After the trial home visit ended, Maisy refused to complete UAs, visited with her children only sporadically, and, by not informing OCS when she moved, made it difficult for OCS to even communicate with her.

### C. The State Made Active Efforts To Prevent the Breakup of the Family.

In order for a court to terminate parental rights, the state must show by a preponderance of the evidence that doing so is in the best interests of the child.[14] In the case of an Indian child, the state must further show by clear and convincing evidence that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful,"[15] and, by evidence beyond a reasonable doubt, that "continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child."[16] Under ICWA, an "Indian child" is any unmarried person under the age of eighteen who is either "a member of an Indian tribe" or "eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."[17] It is undisputed that Maisy's children are Indian children by way of their affiliation with the Native Village of Fort Yukon. Maisy argues that the state failed to make the required active efforts, pointing to the state's lack of involvement during the trial home visit and the fact that her case was handled at various times by six different department employees. The state argues that it made active efforts to reunify the family over the course of several years and in conjunction with organizations in the Native community.

We have stated that "a parent's demonstrated lack of willingness to participate in treatment may be considered in determining whether the state has taken active efforts."[18] Additionally, we look to the state's involvement in its entirety. For example, in *E.A. v. State, Division of Family & Youth Services*, we noted that the state's failure to make active efforts in a particular seven-month period was "insignificant in light of the extensive remedial efforts the state [had] provided throughout its involvement" with the family apart from that seven-month period.[19]

12. *Frank E. v. State Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 77 P.3d 715, 719 n. 14 (Alaska 2003) (quoting *Martinson v. Arco Alaska, Inc.*, 989 P.2d 733, 737 (Alaska 1999)).

13. *Martinson*, 989 P.2d at 737 (quoting *Adamson v. Univ. of Alaska*, 819 P.2d 886, 889 n. 3 (Alaska 1991)).

14. CINA Rule 18(c)(3).

15. CINA Rule 18(c)(2)(B).

16. CINA Rule 18(c)(4).

17. 25 U.S.C. § 1903(4) (2006).

18. *N.A. v. State, DFYS*, 19 P.3d 597, 603 (Alaska 2001).

19. *E.A. v. State, Div. of Family & Youth Servs.*, 46 P.3d 986, 990 (Alaska 2002).

And in *N.A. v. State, Division of Family & Youth Services,* decided in 2001, we examined state efforts dating back to 1987 and concluded that, even though the state did not provide the mother in that case with a particular treatment program, the numerous services it did offer her were sufficient to meet the active efforts requirement.[20]

Because the state made sufficient efforts to try to help Maisy's family over a period of several years, we affirm the superior court's finding. The state concedes that it failed to make active efforts for three months in 2005, but the superior court properly looked to the entirety of the state's efforts from the time OCS became involved in February 2004 until trial in March 2007. In that period, OCS created and updated more than ten case plans for Maisy and her family; arranged for and offered transportation to UAs; provided referrals to and assisted with funding for alternatives-to-violence classes, parenting classes, and substance abuse assessment; arranged visitation; carried out home visits; coordinated Native-oriented services through TCC and Ch'eghutsen'; gave advice regarding phone service; and offered assistance with housing. The state tried to help Maisy even though she moved on several occasions and refused to give OCS her contact information, and even though she acted belligerently toward social workers and tried to have police remove them from her property.

## IV. CONCLUSION

Because the record contains sufficient evidence both of Maisy's failure to remedy the conduct that placed the children at risk and of the state's many efforts to assist the family, we AFFIRM the superior court's order terminating Maisy's parental rights.

MATTHEWS, Justice, not participating.

---

20. *N.A. v. State, DFYS,* 19 P.3d 597, 599, 603 (Alaska 2001).