**ROLAND L., Appellant,**

**v.**

**STATE of Alaska, OFFICE OF CHILDREN'S SERVICES, Appellee.**

**No. S–13295.**

Supreme Court of Alaska.

May 8, 2009.

Angela M. Greene, Assistant Public Defender and Quinlan Steiner, Public Defender, Anchorage, for Appellant.

Laura C. Bottger, Assistant Attorney General, Anchorage, and Talis J. Colberg, Attorney General, Juneau, for Appellee.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

A father whose parental rights have been terminated argues that the Office of Children's Services (OCS) failed to make statutorily required active efforts to reunify him with his daughter. We agree with the father that OCS failed to make active efforts during the first three months of the daughter's life. But for the next year the father went on the run from the law, and could not be found. After his re-arrest, OCS delayed proceedings to terminate his parental rights for six months to pursue active efforts, and the father did make some progress during that time. We nonetheless conclude that his desultory progress was insufficient considering his history of domestic violence and his problems with anger management, mental health, and substance abuse. We affirm the trial

court's conclusion that OCS made active efforts to reunify father and daughter.

## II. FACTS AND PROCEEDINGS

### A. Facts

Sherrie,[1] an Indian child, was born on May 2, 2006. Roland is Sherrie's father. He was in jail when Sherrie was born. OCS identified Sherrie as a child in need of aid shortly after birth. OCS identified Roland as Sherrie's father within a few weeks of her birth. But Sherrie's social worker did not contact Roland at the jail except to send someone to obtain a specimen for paternity testing and to give Roland her card.

Roland got out of jail in July 2006, and on August 8 he called Sherrie's social worker and asked for visitation with Sherrie. Sherrie's social worker set up visitation for Wednesday mornings from nine to ten, but at first she could not contact Roland to tell him because he did not give her his contact information. A few weeks later, he contacted her and she told him about the visitation. At the termination trial, the social worker testified that for three weeks in a row, Roland failed to show up at the visitations. She testified that when he was telephoned,[2] Roland said that he just woke up because he was working the night shift as a janitor, and he lived too far away to get there in time, so he would have to miss the visitation.

In October Sherrie's social worker talked to Roland about a case plan, but he refused to participate. The social worker testified that in that conversation Roland said he was "not going to work a fucking case plan." She also testified that he referred to Sherrie as "the damn baby." Roland's testimony differed, but the trial court believed the social worker's version of events, finding that in 2006 Roland "told the social worker in no uncertain terms he would not work a case plan."

The social worker had no further contact with Roland after that. She explained: "He was on the run. His probation officer and I were talking and we had an agreement if he were found, if . . . I found out where he was, I would let him know or if he found out, he would let me know." Roland later testified that he had been staying with a friend at the Alaska Senior Center. He agreed that he had been "on the run," and if law enforcement had found him he would have gone back to jail.

Roland was arrested and re-incarcerated in September 2007. The social worker learned his whereabouts in late November or early December 2007, when Roland called her to ask for visits with Sherrie.

### B. Proceedings

In December 2006 OCS filed for termination of Roland's parental rights. The case went to trial in December 2007. At trial, evidence focused several times on OCS's failure to contact or assist Roland while he was in jail during the first few months of Sherrie's life. On the second day of trial, OCS decided to continue the termination proceedings against Roland in order to have additional time to work with him. OCS cited "the evidence that came out at the beginning of the trial and the concerns that I think everybody had about the efforts that had been made up to [August 2006]." Superior Court Judge Craig F. Stowers agreed, and admonished Roland to take full advantage of his second chance. Judge Stowers advised Roland "don't waste any time and don't let a single opportunity to do what it is that you need to do go by." Roland replied: "Yes, sir."

In January 2008 Sherrie's social worker met with Roland to develop a case plan and begin visitation with Sherrie. But after two visits, Roland told Sherrie's social worker not to bring Sherrie to the jail any more because he was concerned about germs at the jail. In late March he asked for visitation to start again. In April he was moved to a jail in Palmer, and visitation was reduced to once a month because of the time needed for a visit: It is a five-hour trip for a social worker to bring Sherrie to Palmer, do a one-hour visit, and drive back to Anchorage.

---

**1.** We use pseudonyms to protect the identities of the parties.

**2.** By this time the social worker had obtained contact information for Roland.

While in jail in Anchorage, Roland refused to participate in mental health evaluation services that were available to him there. The social worker testified that he "said he would not participate in [the Anchorage jail's mental health] unit."[3] She also testified that "in the past ... he had been on meds, but he said he wasn't going to take meds again. He also added that if he did take meds, then people would think he was mentally ill." Mental health evaluation is not available at the Palmer jail.

Other than the mental health evaluation, Roland was in compliance with the rest of his case plan. Once in Palmer he started taking many of the classes offered in the jail. He took classes in parenting, anger management, and preventing family violence.[4] He requested funds for a substance abuse assessment, which could be done at the Palmer jail, and OCS agreed to provide the money, although it had not yet done so at the time of trial.

During these months, Roland's relationship with Sherrie's social worker deteriorated. He claimed that she interfered with his visits with Sherrie and inappropriately discouraged him from working his case plan. A number of credible witnesses, many of whom were witnesses to Roland's visits with Sherrie and other contact with Sherrie's social worker, rebutted his testimony. He continually insisted that she be removed from the case, even writing a letter to the court asking she be removed. Sherrie's social worker testified that shortly before the trial she had been scheduled to take Sherrie to visit Roland in Palmer. Before the visit she got a letter from Roland "saying that he no longer wanted me as a social worker, he would like to file a restraining order against me, he doesn't want me around him." Because she could not find someone else to take her place on the scheduled visit, that visit never happened.

The termination trial recommenced on June 26, 2008. After the trial, the court terminated Roland's parental rights. It found that OCS failed to make active efforts in the three-month period when Roland was in jail after Sherrie's birth, but that Roland then refused to work a case plan, and went on the run, making "no effort to support his daughter or maintain any visitation with her." The court wrote: "Only with his most recent arrest and incarceration did he express an interest in working a case plan.... [T]his interest and participation is too little, too late...."

The court discussed Roland's history of domestic violence and violent crime, and his failure to protect Sherrie from her mother's drug abuse. The court found a "serious question whether [Roland] has a mental illness or serious emotional disturbance that may place his daughter at substantial risk of physical harm or mental injury," but that the state did not prove by clear and convincing evidence that this was the case. Finally, the court found that Roland's "refusal to cooperate with his case plan's requirement to undergo a psychological assessment is relevant to his failure to adequately work his case plan, but it does not, in and of itself, prove he suffers from mental illness."

The court also discussed Roland's decision to go on the run from the law for a year. The court noted that Roland "has been in jail or on the run" for all of Sherrie's life. The court also noted that Roland's disappearance for a year hampered OCS active efforts. "Though the department could have done more, it was [Roland], after all, who put himself in jail and on the run." The court found OCS met the "active efforts" requirement:

> The Court finds that under the totality of the circumstances and given the social worker's active efforts since the December

**3.** Roland testified that he spent a week in the Anchorage jail's mental health unit for observation, but that he was never given an assessment, and was returned to the general population after a week of observation revealed no problems. The judge, however, found the social worker's testimony that Roland refused to cooperate with an assessment to be credible.

**4.** At the time of trial, OCS had not yet reviewed those classes to determine if they meet Roland's case plan's requirements. Sherrie's social worker testified that sometimes jail classes do not meet OCS standards: "Some of those classes are very short and probably don't address what is needed by people that have a long history ... of violence."

11, 2007 testimony, [OCS] has proved by clear and convincing evidence that it made active efforts *under the circumstances* to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family. This is not to say that this case represents [OCS's] best active efforts—it doesn't. But the Court has considered [Roland's] role, especially prior to his relatively recent change of heart, in earlier refusing to engage in a case plan, then going on the run until his arrest in 2007.... In the totality of circumstances, [OCS] has crossed the minimum threshold of active efforts required given the circumstances of this case.

(Emphasis in original.)

## III. STANDARD OF REVIEW

 In termination of parental rights cases, we review a superior court's findings of fact for clear error.[5] We find clear error when the record, reviewed in the light most favorable to the prevailing party, firmly and definitely convinces us that the superior court made a mistake.[6] Whether findings of fact meet the statutory standard is a question of law that we review *de novo*.[7] Whether the state complied with the statutory active efforts requirement is a mixed question of law and fact.[8]

## IV. DISCUSSION

**OCS Proved by Clear and Convincing Evidence that It Made the Active Efforts ICWA Requires To Prevent Breakup of this Indian Family.**

 When the state seeks to terminate parental rights to an Indian child, the Indian Child Welfare Act (ICWA) requires that it must prove that it made active efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family, and that those efforts were unsuccessful.[9] Roland argues that OCS failed to make active efforts when he was in jail May through July 2006, and that this initial failure "undermined any subsequent remedial measures taken by OCS." He also argues that OCS's efforts in the spring of 2008 were "too little, too late." Even if he followed his case plan exactly, he argues, there was not enough time for him to complete the case plan before termination of his parental rights. The state responds that, although it admittedly failed to make active efforts during the first three months, those months were "overshadowed" by Roland's conduct in refusing to work a case plan and hiding out for a year. The state argues that Roland missed his chance to become a father when he spent a year on the run.

The state's concession that it did not make active efforts when Roland was in jail in 2006 is well taken. No one contacted Roland while he was in jail, except to take a paternity sample and give him the social worker's business card. Roland first initiated contact with OCS when he was released in the summer of 2006. OCS apparently did not formulate a case plan until that time.

But we disagree with Roland's theory that the state's failure of active efforts during the first three months of Sherrie's life prevented him from ever becoming a parent to Sherrie. We have held that active efforts must be evaluated over time.[10] These three months—out of the twenty-six months before termination of Roland's rights—do not determine the outcome of this case.

We also disagree with Roland's argument that the active efforts from January through

---

**5.** *Maisy W. v. State, OCS*, 175 P.3d 1263, 1267 (Alaska 2008).

**6.** *Id.*

**7.** *Id.*

**8.** *Id.*

**9.** 25 U.S.C. § 1912(d) (2006).

**10.** *See Maisy W.*, 175 P.3d at 1268–69 (three-month failure of active efforts did not prevent termination of ICWA parent's rights where there was substantial OCS involvement and efforts during three years that case lasted); *E.A. v. State, DFYS*, 46 P.3d 986, 990 (Alaska 2002) (seven-month failure of active efforts over many years of OCS involvement with this ICWA parent did not prevent termination of parent's rights where parent not sober, failed to take many opportunities to get treatment, and when active efforts started again, she was hard to contact and uncooperative).

July 2008 were "too little, too late." First, we think the state made active efforts during that time period. Social workers met with Roland to discuss his case plan, offered him a mental health evaluation at the Anchorage jail, and brought Sherrie regularly for visits. Furthermore, the Palmer jail provided a number of classes to Roland.[11] We conclude that the state made active efforts.

We agree with the trial court that Roland's involvement during that time was too little, too late. Although he made some progress during that time, he failed to take a number of opportunities that the state made available to him. The slow progress that resulted was insufficient considering his history of domestic violence, his prior refusal to work with a case plan,[12] and his disappearance for a year of his daughter's short life.[13]

First, after getting a second chance and being advised by the court not to let a single opportunity go by, Roland incredibly terminated his visits with Sherrie in January after only two visits. He had showed little interest in his daughter in the past, and then decided to halt visitation for two months between mid-January and mid-March 2008. In 2006, Roland had failed to attend the few visitations scheduled for him when he was still in contact with OCS. He did not attempt to contact or provide for his daughter during the year he was hiding from the law, and also for his first few months in jail after his re-arrest. An important part of his case plan was bonding with his daughter and forming an attachment with her. But after only two visitations in January, Roland called off the visitations until late March. Those two months were Roland's best opportunity to bond with his daughter because shortly thereafter he was transferred to Palmer where visitation with his daughter, who had to be brought from Anchorage, was reduced to once a month. Rather than seizing his opportunity, Roland tossed it away.

Second, there is some evidence that Roland suffers from mental health problems, and he refused to comply with the portion of his case plan requiring him to get a mental health evaluation when he had the opportunity to do so in jail in Anchorage. Mental health evaluations were available for inmates at the Anchorage jail, but Roland refused to be involved with that program. He was then transferred to a Palmer jail that does not offer mental health evaluations. Therefore, Roland would have to wait until his release in September to get a private evaluation.

Third, Roland refused to work with the social worker assigned to Sherrie's case. Indeed, he told her he wanted to commence a lawsuit against her. This further hindered his ability to comply with his case plan in the few months available to him. It resulted in the cancellation of his monthly visit with Sherrie while in Palmer. It is troubling that he gave up time with Sherrie in order to avoid a social worker he disliked.

Roland was aware of how hard he would have to work at his case plan during the continuance. When Judge Stowers continued the termination trial in January 2008 in order to give OCS more time to work with Roland, he made clear to Roland that he would have to act diligently and take full advantage of the continuance in order to avoid termination of his parental rights:

> THE COURT: I would note that the child [Sherrie], you know, needs to get permanency and consistency and things like that. So time is of the essence in terms of her best interest. And [Roland], I would say to you, sir, you know, you've managed to have this case resurrected to give you a

11. See *T.F. v. State, Dep't of Health & Soc. Servs.*, 26 P.3d 1089, 1096 (Alaska 2001) (noting that ICWA requires the state to make active efforts, and therefore the efforts of different agencies, such as OCS and the Department of Corrections, may be considered together when determining whether the state made active efforts).

12. See *Maisy W.*, 175 P.3d at 1268 ("We have stated that 'a parent's demonstrated lack of willingness to participate in treatment may be considered in determining whether the state has taken active efforts.'" (quoting *N.A. v. State, DFYS*, 19 P.3d 597, 603 (Alaska 2001))).

13. We have previously considered a father's disappearance and avoidance of OCS when determining whether the state made active efforts. See *Ben M. v. State, Dep't of Health & Soc. Servs.*, 204 P.3d 1013, 1021 (Alaska 2009, *amended* Apr. 21, 2009). *See also Rick P. v. State, Office of Children's Servs.*, 109 P.3d 950, 957 (Alaska 2005).

chance to work a case plan and to do all of the things that [OCS] believes is necessary, so please don't waste any time and don't let a single opportunity to do what it is that you need to do go by.

[ROLAND]: Yes, sir.

THE COURT: Because the clock is running.

[ROLAND]: Yes, sir.

Roland let a number of opportunities pass him by, and did waste time, in this crucial second-chance period. For a man with significant domestic violence and anger management problems, and possible mental health and substance abuse problems, who had been on the run from the law for almost half his daughter's short life, he made insufficient progress on his case plan when he had a second chance at reunification with his daughter. We agree with the trial court that OCS made active efforts during this time, and that those efforts failed.

## V. CONCLUSION

Although OCS did not make ICWA-required active efforts during the first three months of this case, it made active efforts after that, but they failed. The father's intervening year-long disappearance gave him a limited time before termination of his parental rights in which to address the various requirements of his case plan. Sherrie is now three years old, and has spent all three years with a foster family that wishes to adopt her. She can no longer wait for Roland. We AFFIRM the termination of Roland's parental rights.

MATTHEWS, Justice, not participating.