NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| EZRA T. , | ) | |
| | ) | Supreme Court No. S-15252 |
| Appellant, | ) | |
| | ) | Superior Court No. 3PA-11-00134 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, | ) | AND JUDGMENT* |
| DEPARTMENT OF HEALTH & | ) | |
| SOCIAL SERVICES, OFFICE OF | ) | No. 1510 – July 9, 2014 |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Vanessa White, Judge.

Appearances: Elizabeth Smith, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Andy Harrington, Assistant Attorney General, Fairbanks, and Michael C. Geraghty, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

---

\*       Entered under Appellate Rule 214.

Ezra and Lydia T. are the biological parents of Amanda, who was taken into State custody by the Office of Children's Services (OCS) in December 2011.[1] The reasons for this occurrence included domestic violence between the parents and substance abuse by Lydia. The precipitating incident occurred when Ezra violated a judicial no-contact order and a safety plan implemented by OCS by allowing Lydia to care for Amanda unsupervised. After removing Amanda, OCS worked with Ezra to develop and implement a case plan which called, in part, for Ezra to participate in a psychological evaluation and follow all treatment recommendations. OCS referred Ezra to Dr. Melinda Glass and paid for the evaluation, which was conducted in February 2012. Dr. Glass's diagnoses of Ezra included possible opioid dependence and dependent personality disorder. Dr. Glass explained that Ezra

> readily admits experiencing great difficulty functioning. . . . [He] has repeatedly returned to his relationship with his wife and left his daughter in her care even after she failed to seek treatment, received multiple DUIs, and lost their daughter. . . . [H]is needs and difficulty making autonomous decisions have inadvertently placed his daughter in danger. In addition, [Ezra] has allegedly committed acts of domestic violence as well as been the recipient of acts of domestic violence and does not appear to have had the wherewithal to remove himself from these situations.

Dr. Glass recommended that Ezra engage in a university-based inpatient treatment program with a focus on detoxification and alternative treatments for chronic pain and, after any substance abuse issues were stabilized, in "extended individual counseling focused upon his social anxiety and dependent style of interacting with others."

---

[1] Pseudonyms are used throughout to protect the privacy of the parties.

Ezra did not follow Dr. Glass's recommendations. He expressed his belief that Dr. Glass was unqualified to recommend substance abuse treatment. He then declined to act on OCS's offer and referral to provide him with a substance abuse evaluation. Several months after completing Dr. Glass's evaluation Ezra tested positive for methamphetamine and was dismissed from the pain clinic that had been prescribing and managing his pain medication. About a month later he participated in an independent substance abuse evaluation. That evaluation recommended medium-level residential substance abuse treatment to be followed by continued care. Ezra did not follow that recommendation either.

In December 2012 OCS petitioned to terminate Ezra's parental rights. A trial was held in May 2013. Ezra argued that he did not need substance abuse treatment because he had weaned himself from his pain medication. He also claimed that he had not participated in substance abuse treatment because doing so would have cost him his job, and thus his home, his vehicle, and his lifestyle. He testified that he intended to begin mental health counseling soon, now that he had completed parenting classes, but that he could miss only a certain amount of work and keep his job. But he conceded that he had lost his job more than two months before the trial was held and that the parenting classes had been held in the evening. Following the trial, the trial court terminated Ezra's parental rights to Amanda.[2]

Ezra appeals the trial court's order terminating his parental rights. He challenges three of the trial court's findings. He argues, first, that he remedied conduct or conditions that placed Amanda at risk of harm by "deci[ding] to stop taking pain

---

[2]     The trial court also terminated Lydia's parental rights. We have since affirmed the termination of Lydia's rights. *See Lydia T. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, Mem. Op. & J. No. 1488, 2014 WL 1357275 (Alaska Apr. 2, 2014).

medication on a regular basis" and by "participat[ing] in classes designed to help him be a more protective father"; second, that OCS did not make reasonable efforts to foster the safe return of Amanda to Ezra because OCS had only "minimal contact" with him and "fail[ed] to assist him in obtaining substance abuse treatment"; and third, that termination of his parental rights was not in Amanda's best interests because "the trial court did not give independent consideration to the relationship between Ezra and [Amanda]." Finding no error by the trial court, we affirm.

We review a trial court's factual findings for clear error.[3] Findings are clearly erroneous if review of the entire record in the light most favorable to the party that prevailed below leaves us "with a definite and firm conviction that a mistake has been made."[4] "Conflicting evidence is generally insufficient to overturn the superior court, and we will not reweigh evidence when the record provides clear support for the superior court's ruling."[5] Whether a parent failed to remedy conduct or conditions that placed the child at substantial risk of harm is a factual finding,[6] as is whether termination

---

[3]    *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 427 (Alaska 2012) (citing *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1103 (Alaska 2011)).

[4]    *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004) (quoting *A.B. v. State, Dep't of Health & Soc. Servs.*, 7 P.3d 946, 950 (Alaska 2000)) (internal quotation marks omitted) (citing *Martin N. v. State, Dep't of Health & Soc. Servs.*, 79 P.3d 50, 53 (2003)).

[5]    *Sherman B.*, 290 P.3d at 428 (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)) (internal quotation marks omitted).

[6]    *Id.* (quoting *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 270 (Alaska 2011)).

of a parent's rights is in a child's best interests.[7] Whether OCS made reasonable efforts to reunify a family is a mixed question of law and fact.[8] We review the legal aspects of mixed questions de novo.[9]

Alaska Statute 47.10.088(a)(2) requires a trial court to find that a parent has not remedied in a timely fashion conduct or conditions that placed the child at risk of harm before terminating parental rights. In finding that Ezra did not remedy such conduct or conditions, the trial court focused on two issues: Ezra's substance abuse and his dependent personality disorder.

As to substance abuse, the trial court noted that despite Dr. Glass's diagnosis of possible opioid dependence and strong recommendation that Ezra pursue inpatient treatment to address alternatives to narcotic medication for chronic pain, Ezra denied his need to participate in treatment. Moreover, when Ezra injured his thumb, he obtained and used a prescription for opioid medication without informing his medical providers of Dr. Glass's diagnosis and recommendation, of his history of using pain medication, or of his recently having been dismissed from his pain medication clinic for having abused methamphetamine. The trial court found that Ezra's conduct "demonstrat[ed] an absence of any real judgment when faced with the option of using . . . narcotics." Considering all the evidence, including Ezra's recent positive test for methamphetamine, the trial court found that Ezra was abusing medications in a binge-and-withdraw cycle. Along with mental health counseling, the court characterized substance abuse treatment as "the most critical component[] of his case plan," and stated

---

[7]     *Id.* (citing *Christina J.*, 254 P.3d at 1104).

[8]     *Id.* (citing *Christina J.*, 254 P.3d at 1104).

[9]     *Id.* (citing *Christina J.*, 254 P.3d at 1104).

that Amanda "does not need to wait for her dad to realize that he needs substance abuse . . . treatment."

Ezra summarily argues that he "addressed the substance abuse problem in another way: namely, by curbing his use of pain medication." He cites his participation in urinalysis screenings (UAs) to support his argument. But the trial court reasonably found that instead of supporting Ezra's position, his inconsistent participation in UAs supported the court's finding that Ezra was binging on drugs.

The trial court also found that Ezra failed to remedy his mental health issues. The court noted that early in the case Ezra was advised multiple times, including by a court order and by OCS, to allow no contact between Amanda and Lydia "[b]ut contact . . . occurred the whole time." The trial court continued:

> [Ezra's] relationship with [Lydia] was too important to him, which fits in line with his diagnosis of Dependent Personality Disorder. [Ezra] needs [Lydia] as he is emotionally dependent on her . . . . [Amanda's] safety was enough of a minimal concern that it did not factor into what [Ezra] did as he did not take one step in protecting [Amanda]. The Court is not aware of any effort [Ezra] has made to address this very significant concern. [Ezra's] self-serving testimony at trial to the effect of "if [Lydia] is not sober then I would cho[o]se [Amanda] over [Lydia]" is belied by his track record. Given the absence of any counseling to address his dependent personality disorder diagnosis the Court cannot accept [Ezra's] self-serving statements as having any weight.

Along with substance abuse treatment, the trial court characterized mental health treatment as one of "the most critical components of [Ezra's] case plan." It stated that Amanda "does not need to wait for her dad to realize that he needs . . . mental health treatment." The court concluded that "[Ezra] continues to experience significant denial about what he would need to do in order for him to reunify with [Amanda]."

Ezra argues that this finding was erroneous because in making it the trial court assumed that he and Lydia remained a couple. We have reviewed the record and find no error in the trial court's statement that "this couple, as far as the Court can tell is still a couple." The trial court went on to acknowledge that Ezra and Lydia might not continue as a couple:

> [I]t is a question of them making full and final decisions as to whether they are going to continue to be in a relationship and how they are going to address the mixture of emotion and behavior that cause them to be violent and aggressive with each other despite the presence of the child. This work has not been done.

And, as OCS correctly points out, Ezra

> misses the trial court's larger point: with the relationship between Ezra and [Lydia] unsettled, Ezra's failure to address his dependent personality disorder — which was a root cause why he was unable to protect [Amanda] in the first place — meant [Amanda] would still be at risk if returned to his care.

Ezra also points to his testimony at trial "that he planned to start therapy immediately now that his parenting classes had ended and he would have additional time." But even assuming this were true, it does not negate the trial court's finding that even after therapy has begun "[Amanda] and [Ezra] would need to work on their relationship, and maybe by the time she starts third grade they could talk about reunification. [But Amanda] needs permanency now . . . ."

Finally, Ezra argues that the trial court's finding was erroneous because he was having successful visits with Amanda and had completed some of the parenting and domestic violence/anger management class components of his case plan. The trial court rejected that argument, finding that "while there has been some progress made, [Ezra's] lack of efforts in other areas has made the therapeutic visits fairly insignificant in terms of the legal analysis the Court must undertake."

Having reviewed the record we conclude that the trial court did not clearly err in finding that Ezra did not remedy conduct or conditions that placed Amanda at risk of harm.

Alaska Statute 47.10.088(a)(3) requires a trial court to find that the State made reasonable efforts to supply a family with services designed to enable the safe return of the child to the family home before the court may terminate parental rights. The trial court made that finding, citing, with regard to Ezra, OCS's attempts to keep Amanda in the home through implementing safety plans, developing a case plan, holding team decision-making meetings, making referrals and payments for substance abuse testing and psychological evaluation, and providing supervised visitation.

Ezra argues that OCS's efforts were insufficient because OCS failed to communicate frequently with him and failed to refer him to substance abuse treatment providers. We find no merit to Ezra's arguments. As to the frequency of communication, Ezra is correct that the social worker who testified at trial communicated with him only a few times. But that social worker was assigned the case in January 2013, more than a year after Amanda was taken into custody and just four months before the termination trial. Documents in the record indicate that over the course of the case, OCS communicated regularly with Ezra about his case plan requirements. And Ezra refused to speak to the social worker who earlier had wanted to discuss the recommendations contained in his substance abuse evaluation and referrals to treatment providers, telling her that he wanted to first consult with his attorney. Ezra never got back to that social worker.

Ezra's argument that OCS failed to identify treatment service providers also is unavailing, given his demonstrated reluctance to engage in treatment or therapy, his sporadic participation in UAs, his refusal of OCS's offer to refer and pay for a substance abuse evaluation after he expressed dissatisfaction with Dr. Glass's evaluation, his

demonstrated ability to access providers for the elements of his case plan in which he was willing to participate, and his refusal to discuss a treatment referral with the social worker following his substance abuse evaluation.

Finally, under AS 47.10.088(c), a trial court must consider a child's best interests in deciding whether to terminate a parent's parental rights, and under Alaska Child in Need of Aid Rule 18(c)(3) the trial court must find "by a preponderance of the evidence that termination of parental rights is in the best interests of the child" before terminating parental rights.

Ezra makes three challenges to the trial court's best interests finding. He argues that the trial court never made such a finding in relation to termination of his parental rights; he argues that the only evidence cited by the trial court that might support such a finding was that Amanda's grandparents had become her primary attachment figures, which, he argues, is insufficient to support such a finding; and he argues that because Amanda is placed with relatives and because he wishes to "implement a gradual reunification plan" while allowing Amanda to continue to have a relationship with her grandparents, the trial court's best interests finding should be reversed. Ezra's arguments are without merit.

Despite Ezra's assertion to the contrary, the trial court explicitly found that termination of Ezra's parental rights was in Amanda's best interests:

> [Amanda] needs permanency. She does not need to wait for her dad to realize that he needs substance abuse and mental health treatment. . . . She needs permanency now and [Ezra] has not even really begun the most critical components of his case plan. . . . [Ezra's] lack of efforts in other areas has made the therapeutic visits fairly insignificant in terms of the legal analysis the Court must undertake as to what is in [Amanda's] best interests.

This finding was supported by the testimony of the OCS social worker and of Amanda's therapist and was not clearly erroneous.[10]

Based on these factors we AFFIRM the trial court's order terminating Ezra's parental rights to Amanda.

---

[10] Ezra appears to argue that because these statements were made in the portion of the trial court's written order that focused on his failure to remedy harmful conduct or conditions rather than on the portion that focused on Amanda's best interests, we should not consider them in reviewing his challenge to the trial court's best interests determination. We reject this argument. First, the trial court's oral findings and conclusions, which were not structured in the way that its written order was, contained substantially similar language. In addition, the statements clearly indicate the trial court's opinion that Amanda's immediate need for permanency in light of Ezra's failure to begin addressing his critical issues means that termination of Ezra's parental rights is in Amanda's best interests, wherever those statements appear in the order.