NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DEREK L., | ) | |
| | ) | Supreme Court No. S-15756 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-12-00446 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, | ) | AND JUDGMENT* |
| DEPARTMENT OF HEALTH & | ) | |
| SOCIAL SERVICES, OFFICE OF | ) | No. 1541 – May 20, 2015 |
| CHILDREN'S SERVICES | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Catherine M. Easter, Judge.

Appearances: Megan Webb, Assistant Public Defender, Anchorage, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Mary Ann Lundquist, Senior Assistant Attorney General, Fairbanks, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

I.    INTRODUCTION

        Derek L. murdered the mother of his child, and the superior court terminated his parental rights. Derek now appeals the denial of his request for post-termination

_____

        *    Entered under Alaska Appellate Rule 214.

visitation. We affirm the superior court's finding that there are no extraordinary circumstances that could support such contact.

## II.    FACTS AND PROCEEDINGS

The Office of Children's Services (OCS) assumed emergency custody of Keira[1] when she was two years old based on concerns of neglect and physical abuse. Derek murdered Keira's mother shortly thereafter. OCS eventually petitioned to terminate Derek's parental rights.

Even before OCS assumed custody, Keira lived with her maternal grandparents for several months at a time while Derek was deployed. Keira returned to this placement after OCS assumed custody, and she has lived with her grandparents since early 2013. Keira's grandparents now wish to adopt her. Derek and Keira maintained weekly telephone contact until the termination trial, but the phone calls sometimes caused Keira to misbehave.

At the trial, the parties stipulated that the superior court could order termination of Derek's parental rights under AS 47.10.080(o)[2] because he would be incarcerated for an extended period due to his murder conviction. But Derek asked the court to order that he be allowed to have post-termination visitation with Keira.

The court held a hearing on Derek's request. An OCS caseworker testified that she had facilitated the telephone visitation before the termination trial to make the reasonable efforts required by law, but because of Keira's young age, the contact seemed to be more beneficial to Derek than Keira. The social worker felt that further contact

---

[1]    Pseudonyms are used throughout to protect the family's privacy.

[2]    Under AS 47.10.080(o), the superior court may terminate parental rights if it finds that one parent will be incarcerated during a significant part of the child's minority, there is no other parent willing and able to care for the child, and the incarcerated parent has failed to adequately provide for the care of the child.

would not benefit Keira until she processed her circumstances in counseling and chose to contact her father.

Keira's grandmother testified that telephonic contact between Keira and Derek should cease until Keira is mature enough to decide whether she wants telephone calls. She also testified that therapeutic services will not be available for Keira until she is five years old.

The superior court terminated Derek's parental rights and denied his request for further contact. The court found that contact was not in Keira's best interest because Derek was incarcerated, there was a conflicted relationship between Derek and Keira's grandparents, the grandparents wanted to discontinue further contact until Keira was old enough to make her own choices, and Keira did not know her father very well before OCS assumed custody. The court concluded there were no extraordinary circumstances requiring further contact. Derek now appeals.[3]

## III.    DISCUSSION

Once a superior court terminates parental rights, the parent retains no residual parental rights to the child.[4] Although there is no statutory provision granting authority for post-termination visitation, we have "not . . . foreclose[d] the possibility that the superior court could authorize post-termination visitation in extraordinary circumstances."[5] But even

---

[3]     We review the superior court's factual findings for clear error and reverse these findings only if left with "a definite and firm conviction that a mistake has been made." *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008) (quoting *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. Of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004)) (internal quotation marks omitted).

[4]     *C.W. v. State, Dep't of Health & Soc. Servs.*, 23 P.3d 52, 57 (Alaska 2001).

[5]     *Burke P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*,

(continued...)

in extraordinary circumstances, post-termination visitation only would be permitted "to the extent that the authorized visitation is in the best interest of the child."[6]

Derek argues that the superior court was unable to adequately analyze Keira's best interests because she had not yet received counseling services to help process her mother's death and her father's conviction.

But the superior court reasonably concluded that it would be unhealthy to disturb Keira's sense of permanency by allowing Derek continued visitation, given his strained and adversarial relationship with her grandparents. The grandparents had good reason to discontinue further contact because of the disruptive nature of Keira's reaction. The court also reasonably observed that Derek's absence during Keira's childhood had diminished the bond between them even before OCS took custody of her. Finally, the superior court reasonably concluded that Keira should determine whether and when to contact Derek, given his incarceration for killing her mother.

We conclude that the superior court did not err when it determined that Derek failed to meet his burden of showing that continued visitation was in Keira's best interest.

## IV. CONCLUSION

We AFFIRM the superior court's order denying post-termination visitation.

---

[5](...continued)
162 P.3d 1239, 1248 (Alaska 2007) (upholding superior court's finding that extraordinary circumstances did not exist to support post-termination visitation, based on testimony that the children needed permanency in their lives, were bound for adoption, and father's adversarial relationship with prospective adoptive families might interrupt the children's sense of permanency with their foster families).

[6]    *Id.* (quoting *C.W.*, 23 P.3d at 58) (internal quotation marks omitted).