NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CHIARA R., | ) | |
| | ) | Supreme Court No. S-15798 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 1JU-13-00006/ |
| | ) | 00007/00008 CN |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF HEALTH & SOCIAL SERVICES, | ) | MEMORANDUM OPINION |
| OFFICE OF CHILDREN'S SERVICES. | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 1553 - September 9, 2015 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Louis J. Menendez, Judge.

Appearances: Rachel Cella, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Ruth Botstein, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

## I. INTRODUCTION

A mother challenges the trial court's decision terminating her parental rights to three children. Because the evidence supports the court's findings and the court correctly applied relevant law, we affirm the termination of her parental rights.

---

\* Entered under Alaska Appellate Rule 214.

## II.    BACKGROUND

Chiara R. and Jayson Y.[1] had, relevant to this appeal, three children falling within the definition of an "Indian child"[2] under the federal Indian Child Welfare Act of 1978[3] (ICWA).  The State of Alaska, Department of Health and Social Services, Office of Children's Services (OCS) had contact with the family for about a decade before becoming actively involved and taking emergency custody of the children in 2013.  OCS petitioned in 2014 to terminate Chiara's and Jayson's parental rights.

The standards for terminating parental rights are provided in Alaska Child in Need of Aid Rule 18, governed primarily by Alaska Statutes but also, in the case of an Indian child, by federal requirements under ICWA.[4]  On the first day of trial in

---

[1]    Pseudonyms  are used for the family members.

[2]    *See* 25 U.S.C. § 1903(4) (2012).

[3]    25 U.S.C. §§ 1901–1963. ICWA establishes "minimum Federal standards for the removal of Indian children from their families and [for] the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." 25 U.S.C. § 1902.

[4]    CINA Rule 18 (referencing requirements in AS 47.10.011, 47.10.080, and 47.10.086; and providing, in the case of Indian children, protocols that comport with ICWA, 25 U.S.C. § 1912(d) and (f)).

Under Alaska CINA Rule 18(c) parental rights to an Indian child may be terminated at trial only if OCS makes certain showings:

OCS must show by clear and convincing evidence that:  (1) the child has been subjected to conduct or conditions enumerated in AS 47.10.011; (2) the parent has not remedied the conduct or conditions that place the child at substantial risk of harm or has failed within a reasonable time to remedy the conduct or conditions so that the child would be at substantial risk of physical or mental injury if returned to the parent; and (3) active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family;

(continued...)

October 2014 Jayson voluntarily relinquished his parental rights.  After completion of the trial, the court found that OCS had met its burden of proof for the termination of Chiara's parental rights.

Chiara appeals only one of the five findings underlying the termination of her parental rights: the finding that OCS made active efforts to provide remedial services and rehabilitation programs designed to prevent the breakup of the family.

## III.   STANDARD OF REVIEW

"[W]hether OCS has made active efforts as required by ICWA is a mixed question of law and fact; [we] review[ ] the questions of law de novo."[5]  "In CINA cases, we review the superior court's factual findings for clear error."[6]

> Findings are clearly erroneous if, after reviewing the record in the light most favorable to the prevailing party, we are left with a "definite and firm conviction that a mistake has been made."  Conflicting evidence is generally insufficient to overturn the superior court, and we will not reweigh evidence

---

[4]      (...continued)

OCS must show beyond a reasonable doubt, including qualified expert testimony, that continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child; and

OCS must show by a preponderance of the evidence that the child's best interests would be served by termination of parental rights.

[5]      *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1104 (Alaska 2011) (citing  *Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1018 (Alaska 2009)).

[6]      *Id.* at 1103 (citing *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

when the record provides clear support for the superior court's ruling.[7]

"When reviewing factual findings . . . we ordinarily will not overturn a trial court's finding based on conflicting evidence,"[8] and "[w]e will not reweigh the evidence when the record provides clear support for the trial court's ruling."[9] "[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[10]

## IV.	DISCUSSION

"Before terminating parental rights to an Indian child, the trial court must find by clear and convincing evidence that OCS made active, but unsuccessful, efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family."[11] "Our concern is not with whether the State's efforts were ideal, but with whether they crossed the threshold between passive and active efforts."[12]

---

[7]	*Maisy W.*, 175 P.3d at 1267 (footnotes omitted) (quoting *Brynna B. v. State, Dep't of Health & Soc. Servs., Div of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004)).

[8]	*Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 79 P.3d 50, 53 (Alaska 2003) (citing *In re Friedman*, 23 P.3d 620, 625 (Alaska 2001)).

[9]	*D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 214 (Alaska 2000).

[10]	*In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001) (quoting *Knutson v. Knutson*, 973 P.2d 596, 599-600 (Alaska 1999)) (internal quotation marks omitted).

[11]	*Sylvia L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 343 P.3d 425, 432 (Alaska 2015) (citing 25 U.S.C. § 1912(d); CINA Rule 18(c)(2)).

[12]	*Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 272 (Alaska 2011) (citing *Dale H. v. State, Dep't of Health & Soc.*

(continued...)

Although "no pat formula exists for distinguishing between active and passive efforts," distinctions do exist. . . . [A]ctive efforts require taking a parent through the steps of a plan and helping the parent develop the resources to succeed; drawing up a case plan and leaving the client to satisfy it are merely passive efforts.[13]

Chiara also argues — and OCS does not disagree — that active efforts must promote reunification and be targeted at "the particular family needs that caused the child to be in need of aid."[14]

"Whether OCS made active efforts is determined on a case-by-case basis."[15] Relying on an earlier dissenting opinion Chiara asserts that "rather than excusing lapses in OCS efforts by considering the entirety of the state's involvement with a family in the active efforts analysis . . . courts should police the quality of OCS efforts to ensure they are consistent and directed at attaining permanency."[16] But it is nonetheless clear that

---

**12** (...continued)
*Servs., Office of Children's Servs.*, 235 P.3d 203, 213 (Alaska 2010)).

**13** *Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 763 (Alaska 2009) (footnote omitted) (quoting *A.A. v. State, Dep't of Family & Youth Servs.*, 982 P.2d 256, 261 (Alaska 1999)).

**14** *Kyle S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 1262, 1269 (Alaska 2013) (citing *Burke P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 162 P.3d 1239, 1245 (Alaska 2007)).

**15** *Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1114 (Alaska 2010) (citing *Wilson W. v. State, Office of Children's Servs.*, 185 P.3d 94, 101 (Alaska 2008)).

**16** *See Jon S.*, 212 P.3d at 768 (Christen, J., dissenting) ("Measuring OCS's active efforts over the entirety of a case, without regard for the impact of delays attributable to OCS, threatens to lower the 'active efforts' standard and permits unnecessary — and harmful — delays in achieving permanency.").

"[i]n determining whether OCS made active efforts, the trial court may consider all services provided during the family's involvement with OCS; it need not focus on a distinct period of time."[17]

Chiara contends that OCS failed in three specific ways to make active efforts: (1) failing to "engage Chiara in its early efforts . . . with the family"; (2) failing to pursue a visitation plan to strengthen Chiara's bond with the children; and (3) failing to "liaise with Chiara's [substance abuse] providers" at Southeast Alaska Regional Health Consortium (SEARHC). Chiara then argues that the superior court erroneously "overlooked these failings" and excused OCS from making active efforts.

Chiara first asserts that OCS approached her only one time in the four months before assuming custody of the children, but this does not establish a failure to make active efforts. Even if Chiara had been available for contact — a disputed fact during the termination trial given her absence from the family home — the record establishes that OCS made significant efforts during the initial stages of this case to prevent the breakup of the Indian family. These efforts include contacting Chiara the one time, contacting Jayson and the children, providing services and cards to buy food for the family, trying to find safe living arrangements for the children, and attempting safety planning with Jayson. Because OCS's active efforts may be evaluated over the entirety of its contact with the Indian family, even if Chiara were correct that OCS's efforts were insufficient during the four-month period, the trial court properly evaluated the entirety of OCS's efforts.

Chiara also focuses on OCS's visitation efforts, arguing that OCS failed to make active efforts by initially providing her visitation with the children jointly with

---

[17]    *Sylvia L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 343 P.3d 425, 432 (Alaska 2015) (citing *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1268-69 (Alaska 2008)).

Jayson, failing to help her with her depression, moving visitation to a therapeutic setting at Catholic Community Services (CCS), and restricting telephonic visitation. But despite Chiara's disagreements, the trial court found that OCS in fact had made extraordinary visitation efforts, and the record supports this finding. The evidence in this case clearly established the children's needs for counseling and therapy. OCS attempted visitation in multiple settings, and changing to therapeutic visitation — while arguably more restrictive for Chiara — was specifically designed to provide the opportunity to heal the children and family. Even if visitation away from CCS would have resulted in increased frequency — a dubious prediction considering Chiara's frequent failure to attend meetings or visitation — therapeutic visitation was necessary due to the severity of the family's issues.

Moreover Chiara failed to attend visitation, came late, or came under the influence of drugs; her conduct was not under OCS's control.[18] Chiara was required, but failed, to change her harmful behavior before receiving visitation; this does not establish a lack of active efforts.[19] Similarly telephonic visitation did not occur because Chiara would not change her behavior and work with OCS to establish proper visitation procedures. OCS's efforts provided significant opportunities for Chiara to repair the damage to her children; the trial court found that Chiara failed to seize these opportunities.

---

[18] *See Roland L. v. State, Office of Children's Servs.*, 206 P.3d 453, 456-58 (Alaska 2009) (concluding that OCS made active efforts by providing opportunity for and facilitating visitation, but efforts failed to due to parent's lack of progress).

[19] *See Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1021 (Alaska 2009) ("Where services have been provided and a parent has demonstrated a lack of willingness to participate or take any steps to improve, this court has excused minor failures by the state and rejected arguments that the state could possibly have done more.").

Chiara also alleges OCS failed to coordinate with SEARHC and obtain its substance abuse assessment and other information regarding services she received. But there was testimony that OCS tried and was unable to obtain any information from SEARHC. Even if Chiara did in fact complete an assessment, the record establishes her failure to make any meaningful progress addressing her substance abuse.[20] Despite OCS's referrals, offers to pay for services, offers for transportation, and scheduling of urinalysis testing, Chiara continued to miss visitation and when she attended she was often under the influence of drugs; she was unable to recognize her problem or admit that her substance abuse was hurting her children.

Chiara ties these alleged failings by OCS to an argument that the trial court incorrectly forgave OCS's alleged passive efforts. But the trial court never concluded that OCS was relieved of its duty to make active efforts, and Chiara does not point to an OCS decision to stop trying to engage Chiara. In sum our review of the record in this case leads us to conclude that the trial court did not err in determining that OCS made the required, but unsuccessful, active efforts to prevent the breakup of this Indian family.

## V.    CONCLUSION

We AFFIRM the trial court's termination of parental rights.

---

[20]    *See Lucy J.*, 244 P.3d at 1114-17 (concluding that OCS made active efforts by offering services to help parent address substance abuse and parent failed to meaningfully address substance abuse).