NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite a memorandum decision in a brief or at oral argument should review Appellate Rule 214(d).*

# THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| DUSTIN B. and JANE B., ) | |
| ) | Supreme Court Nos. S-15466/15475 |
| Appellants, ) | (Consolidated) |
| ) | |
| v. ) | Superior Court Nos. 3AN-11-00167/ |
| ) | 00176 CN |
| STATE OF ALASKA, DEPARTMENT ) | |
| OF HEALTH & SOCIAL SERVICES, ) | MEMORANDUM OPINION |
| OFFICE OF CHILDREN'S SERVICES, ) | AND JUDGMENT* |
| ) | |
| Appellee. ) | No. 1519 - October 1, 2014 |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Olena Kalytiak Davis, Anchorage, for Appellant Dustin B. Randall S. Cavanaugh, Kalamarides & Lambert, Anchorage, for Appellant Jane B. Jonathan A. Woodman, Assistant Attorney General, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Appellee. Lisa M. Wilson, Assistant Public Advocate, and Richard Allen, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

---

\*      Entered under Alaska Appellate Rule 214.

**INTRODUCTION**

Dustin B. and Jane B. appeal the termination of their parental rights to their son, Darryl.[1] The parents challenge the trial court's findings that: (1) Darryl was a child in need of aid; (2) they did not remedy within a reasonable time the conduct or conditions that led to Darryl being in need of aid; (3) the State of Alaska, Department of Health and Social Services, Office of Children's Services (OCS) made reasonable efforts to reunify the family; and (4) terminating their parental rights was in Darryl's best interests.[2] After reviewing the record and considering the trial court's findings under the applicable standards of review,[3] we see no merit to their challenges and therefore affirm the termination of their parental rights to Darryl.

---

[1]    Pseudonyms are used to protect the family's privacy.

[2]    *See* AS 47.10.088 (setting out factual findings required for involuntary termination of parental rights).

[3]    In a CINA termination proceeding, we review a superior court's factual findings for clear error. *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1103 (Alaska 2011) (citing *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)). Factual findings are clearly erroneous if review of the entire record leaves us with a definite and firm conviction that a mistake has been made. *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 427-28 (Alaska 2012) (quoting *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010)). "Whether a child is in need of aid and whether the parent failed to remedy the 'conduct or the conditions that placed the child at substantial risk' of harm are factual findings reviewed for clear error." *Sherman B.*, 290 P.3d at 428 (quoting *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 270 (Alaska 2011)). Best interests findings also are factual findings reviewed for clear error. *Sherman B.*, 290 P.3d at 428 (citing *Christina J.*, 254 P.3d at 1104). Whether OCS made reasonable efforts to reunify the family is a mixed question of law and fact, and we review the questions of law de novo. *Sherman B.*, 290 P.3d at 428 (citation omitted).

## DISCUSSION

### CINA Status

The court found by clear and convincing evidence that Darryl was a child in need of aid under AS 47.10.011(10) because his parents' "ability to parent has been substantially impaired by the addictive and habitual use of an intoxicant, and the addictive and habitual use of the intoxicant has resulted in a substantial risk of harm to the child." Jane appeals this finding, arguing that Darryl was not a child in need of aid when OCS first took custody of him or at the time of termination. But early in the case, both parents stipulated that Darryl was a child in need of aid under AS 47.10.011(10) due to their substance abuse. And OCS is correct that substantial evidence was presented at trial about Jane's lengthy battle with drugs, positive and no-show urinalysis tests (UAs), and failure to complete substance abuse treatment. We do not reweigh the evidence when the record provides clear support for the trial court's ruling.[4] We therefore affirm the trial court's finding that Darryl was a child in need of aid at the time of termination.

### Failure To Remedy

The trial court found by clear and convincing evidence that Dustin and Jane had not remedied within a reasonable time the conduct or conditions in the home that placed Darryl at substantial risk of harm. Both parents appeal this finding.

Jane argues that the trial court should have found she had resolved her substance abuse issues, based on family members' testimony that she did not seem to be using drugs, had kept her job, had been able to care for and help support Darryl and her other children, and no longer stole from her father. Jane argues that financial roadblocks prevented completion of recommended substance abuse treatment and that, although she lacked a completion certificate, the court should have found her knowledge and

---

[4]    *See Maisy W.*, 175 P.3d at 1267.

understanding of the addiction cycle and her relapse prevention plan indicated she had remedied her conduct. Jane maintains that she essentially completed therapy, knew the relevant material, and knew her addiction triggers and how to avoid them. Jane also argues that the court overemphasized the importance of her no-show UAs because transportation and work issues prohibited her from complying. She asserts that OCS and the court should have given more weight to her 33 negative UAs in 2013 and the sum total of UAs in assessing her case compliance and sobriety.[5] Jane asserts that public policy prohibits qualifying a no-show UA as a positive UA, particularly because her missed UAs were caused by financial limitations. She argues that if OCS had reasonably tailored reunification steps to her individual capacity, she could have demonstrated that she had remedied her conduct.

Dustin argues that he was not allowed a reasonable amount of time to remedy the conduct that placed Darryl at risk. Dustin asserts that Darryl's extended family was taking good care of Darryl, and that Dustin just needed more time. Dustin cites undisputed testimony that at the time of trial he was eight months sober and had completed (for the second time) a 12-week intensive outpatient treatment program and ten weeks of aftercare, and that he even was asked to return to the program as a mentor. Dustin points out that, in compliance with the case plan, he completed three different parenting education programs. He argues that he has shown exemplary parenting skills

---

[5]     Between August 4, 2012 and January 18, 2014 OCS scheduled Jane for 99 UAs. Jane had one positive test (she said resulted from pain medication from the dentist), 33 negative tests, and 65 no-shows. After OCS filed its termination petition on August 8, 2013, Jane missed 31 of her 41 scheduled UAs. The court addressed Jane's positive UA, stating that she "had tested positive for opiates after ingesting Vicodin, a drug [she] had a prescription for from a prior occasion. [Jane's positive UA] is concerning, as the level of the drug in her system was extremely high and [her] drug problem began with prescription medication abuse."

in practical daily application and that Darryl loves him and wants to be with him.

OCS argues that although Dustin had made more progress than Jane, the record supports the trial court's finding that Dustin was still at risk of relapse in light of his long history of substance abuse and that he risked returning to incarceration during his remaining year-and-a-half of probation. OCS points out that despite its warnings that a March 2013 trial home visit would be the parents' last chance, Dustin relapsed and was remanded to jail only six days into the visit. OCS also cites the 41 times Dustin failed to show for or refused to take a UA, or provided a dilute sample, despite knowing that no-shows, refusals, and dilute tests would be considered positive. Even after OCS filed the termination petition, Dustin had several no-show UAs and one negative-dilute.

Addressing the parents' failure to remedy, the trial court considered their attendance at substance abuse treatment and lack of follow-through on UAs, as well as Darryl's need for permanency. The court stated:

> As [Dustin] has not shown sobriety for a sufficient time given his 25 year drug addiction, and . . . [Darryl] has been in state's custody two and a half years, it is clear [Dustin] has failed within a reasonable time to remedy his addiction. The likelihood of the parents relapsing and returning to jail is very high due to the severity of their addiction and [Jane's] unwillingness to go to treatment, complete treatment, and document her sobriety. Neither parent is good [for] the other's addiction. It is apparent that [Jane] willfully turns a blind eye to [Dustin's] numerous mishaps and criminal behavior. [Dustin] remains incredibly financially dependent on [Jane] and does not challenge her for failing to complete treatment.

The court pointed out that Jane and Dustin were told before the March home visit that if Darryl had to be removed again, OCS would proceed to termination. The court considered Jane's financial situation but found she used Dustin's financial need for ankle monitoring as an excuse to neglect her own need for treatment. The court found that

transportation issues did not excuse missed UAs or lack of treatment because OCS provided bus passes throughout the case. The court considered Jane's testimony that she had learned from her failed treatments, but still found that she likely would relapse. The court disagreed with the parents' argument that a no-show UA should not be considered evidence of drug use and instead found that a "no-show is . . . indicative of drug use as an attempt to prevent detection and is a failure to comply with a necessary monitoring system." The court found that Dustin had completed substance abuse treatment as of the termination trial, but based on his long history of relapse and inability to maintain sobriety despite numerous attempts at treatment, he had not remedied his conduct.

The court considered the bond between the parents and Darryl, recognizing that when the parents were not in jail or using drugs they did a reasonable job of parenting their son. But the court pointed out that Dustin had been incarcerated for much of Darryl's life, and that during the short periods of time Dustin parented while Jane was incarcerated, he did not parent alone. The court addressed the critical nature of time with respect to young children, finding that delaying permanency for Darryl would subject him to serious harm. In light of the testimony that there already were noticeable, negative changes in Darryl's relationship with his parents, and that Darryl was doing well in his half-sister's care, the court found that any further delay in finalizing permanent placement would not be in Darryl's best interests.

A trial court may rely on a parent's documented history of conduct as a predictor of future behavior in finding failure to remedy.[6] We have stated that missed

---

[6] *Casey K. v. State, Dep't of Health & Soc. Servs.*, 311 P.3d 637, 644 (Alaska 2013) (quoting *Sherry R. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 74 P.3d 896, 903 (Alaska 2003)); *see also Stanley B. v. State, DFYS*, 93 P.3d 403, 407 (Alaska 2004) (upholding finding that repeated incarcerations and continued substance abuse are failure to remedy).

or incomplete UAs may properly be considered failed.[7] And we have stated that compliance with a case plan does not automatically constitute remedy[8] — the question is whether a parent has within a reasonable time remedied problems placing the child at risk and gained necessary skills so the child can be safely returned to the parent's care.[9]

A reasonable time to remedy conduct is statutorily defined as "a period of time that serves the best interests of the child, taking in account the affected child's age, emotional and developmental needs, and ability to form and maintain lasting attachments."[10] In determining whether a parent has remedied conduct in a reasonable time, the trial court may consider any fact relating to the best interests of the child.[11] We have upheld parental rights terminations, despite success in completing substance abuse treatment prior to trial and even success in staying sober for over a year prior to the

[7]    *Casey K.*, 311 P.3d at 643-44.

[8]    *Barbara P.*, 234 P.3d at 1260-61 (affirming finding of failure to remedy; although mother formally complied with case plan — completing substance abuse treatment, staying sober since child's birth, and completing domestic violence and parenting education — trial court believed she had not internalized what she had learned, and there was no assurance she would not fall back into her old dysfunctional ways); *V.S.B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 45 P.3d 1198, 1208 (Alaska 2002) ("Compliance with treatment plans does not guarantee that parental rights will not be terminated because it cannot guarantee that adequate parenting skills will be acquired from the treatment regimen.").

[9]    *Barbara P.*, 234 P.3d at 1260.

[10]    AS 47.10.990(28). *See also Patience P. v. State, Dep't of Health & Social Servs., Office of Children's Servs.*, Mem. Op. & J. No. 1417, 2012 WL 1232605, at *3, 5 (Alaska April 11, 2012) (affirming trial court's finding that parent had not timely remedied harmful conduct because parent was "tremendously vulnerable" to relapse, given her long history of addiction, and parent's participation in treatment program shortly before trial was "commendable, but simply insufficient").

[11]    AS 47.10.088(b).

termination proceeding, based on lengthy history of substance abuse and failed treatment efforts.[12]

We cannot say with definite and firm conviction that the trial court made a mistake here. Jane's lengthy history of drug use, her failure to complete substance abuse treatment, and the many months she had to demonstrate that she was clean and sober by completing the required UAs support the trial court's finding that she failed to remedy the conduct or conditions creating risk of injury to Darryl. And although Dustin made commendable strides in addressing his substance abuse, the record also supports the trial court's finding that he failed to remedy the conduct within a reasonable time. We affirm the trial court's finding.

### Reasonable Efforts

The trial court found by clear and convincing evidence that OCS made timely, reasonable reunification efforts.[13] Both parents appeal this finding.

---

[12] *See Sherry R. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 74 P.3d 896, 902-03 (Alaska 2003) (affirming failure to remedy finding where, despite tremendous progress in substance abuse, court disagreed with mother that a year was a sufficient period of time to demonstrate her ability to remain sober); *see also Thomas H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 184 P.3d 9, 15 (Alaska 2008) (affirming failure-to-remedy finding where father made progress in his most recent treatment effort but did not adequately demonstrate that he would remain sober; he waited too long to begin to remedy his conduct and his lengthy history of substance abuse and criminal behavior created conditions he could not easily remedy).

[13] OCS's statutorily provided duties under AS 47.10.086(a) include:

(1) identify family support services that will assist the parent or guardian in remedying the conduct or conditions in the home that made the child a child in need of aid;

(2) actively offer the parent or guardian, and refer the parent or guardianto, the services identified under (1) of this

(continued...)

Dustin argues the trial court erred in finding that OCS made reasonable reunification efforts because OCS gave them only one chance at a home visit and, after determining he was compliant with the case plan but Jane was not, never discussed single parenting with him. Dustin argues that the court let financial considerations shadow the termination proceedings by linking his parenting ability to his financial dependence upon Jane. Jane asserts that public policy favors vacating the court's termination order because it is based on the prediction that she would relapse, and her failure to comply with the plan was due to her inability to pay for treatment while supporting her family, caring for her children, and helping Dustin comply with his plan by paying for his electronic monitoring. Jane argues that OCS should have worked with her on budgeting or helped with potential grants, because she could not afford to complete substance abuse treatment.

When reviewing whether OCS made reasonable reunification efforts, a court considers OCS's efforts in their entirety, first identifying the problem that caused the children to be in need of aid and then determining whether OCS's efforts were reasonable in light of the surrounding circumstances.[14] The court looks at the history of

---

[13]    (...continued)
subsection; the department shall refer the parent or guardian to community-based family support services whenever community-based services are available and desired by the parent or guardian; and

(3) document the department's actions that are taken under (1) and (2) of this subsection.

[14]    *Barbara P.*, 234 P.3d at 1262-63 (citations omitted) (holding trial court did not clearly err in finding OCS's reunification efforts were reasonable, despite failure to provide visitation in prison, in light of OCS's reunification efforts in their entirety); *Audrey H. v. State, Office of Children's Servs.*, 188 P.3d 668, 679-81 (Alaska 2008)
(continued...)

services provided and the parent's level of cooperation with OCS.[15] OCS's offers of financial assistance may be considered evidence of reasonable efforts,[16] but even under the more stringent "active efforts" requirement applicable in some cases[17] we have upheld a finding that OCS's efforts were satisfactory despite its refusal to provide more financial assistance.[18]

We agree with Dustin that termination of parental rights is prohibited when based *solely* on economic hardship,[19] but the trial court is not prohibited from considering economic factors in its analysis. Here the trial court found:

---

[14]    (...continued)
(holding that, although OCS's efforts were limited at times, this did not render its efforts unreasonable when considered in context of history with parent).

[15]    *Burke P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 162 P.3d 1239, 1245 (Alaska 2007) (citations omitted).

[16]    *See, e.g.*, *Ralph H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 246 P.3d 916, 926 (Alaska 2011) (noting OCS provided gas vouchers and airplane tickets for visitation and offered assistance with rent); *Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 764 (Alaska 2009) (noting active efforts in ICWA case included financial efforts such as advocating for financial housing assistance and vouchers for diapers, clothes, medicine, and other supplies).

[17]    *Cf.* CINA Rule 18(c)(2)(B).

[18]    *See Jeremy S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, Mem. Op. & J. No. 1330, 2009 WL 415562, at *8 (Alaska Feb. 18, 2009) (affirming trial court's finding that OCS satisfied active efforts requirement in providing financial assistance for transportation, day care, and counseling, but not residential substance abuse treatment).

[19]    AS 47.10.019 states that "the court may not find a minor to be a child in need of aid under this chapter *solely* on the basis that the child's family is poor, lacks adequate housing, or exhibits a lifestyle that is different from the generally accepted lifestyle standard of the community where the family lives." (Emphasis added.)

Based on the testimony of [the] social workers . . . , it is clear that the social work offered in this case was excellent. The Department's efforts are well documented; including numerous contacts with the parents whether incarcerated or not, offered urinary analysis, referrals to substance abuse treatment, offered bus passes, timely and reasonable caseplan development, monthly checks on the child, referrals for the child to counseling in Virginia and Focus in Alaska, team decision meetings, visitation for the parents, and permanency planning meetings. . . . These efforts have proven unsuccessful as it remains contrary to [Darryl's] welfare to return to the parents.

We conclude that the record does not support the parents' claims that the termination decision was based on or caused by economic hardship. And Dustin has not established that if OCS had discussed single parenting with him, it would have affected the outcome of the case — the trial court remarked that, although Dustin functioned reasonably well when not in jail or using drugs, he was incarcerated off and on for much of Darryl's life and had not parented Darryl in any meaningful way by himself. The court adequately addressed OCS's duties, and evidence in the record supports the finding by clear and convincing evidence that OCS made reasonable efforts to reunite the parents with Darryl; we affirm this finding.

**Best Interests**

The trial court found by clear and convincing evidence, not just by the required preponderance of the evidence, that termination of Dustin's and Jane's parental rights was in Darryl's best interests.[20]

---

[20] In making a best-interests determination:

[T]he court may consider any fact relating to the best interests of the child, including[:] (1) the likelihood of returning the child to the parent within a reasonable time based on the

(continued...)

Jane argues that due to the child-parent bond, the care Darryl received from his extended family, and the lack of evidence that either parent used drugs in Darryl's presence or that Jane had relapsed in the past two years, the trial court clearly erred in finding that termination of her parental rights was in Darryl's best interests. Dustin argues that the trial court should have considered particular facts in its best interests analysis, such as Dustin and Darryl's emotional connection and the long history of extended family involvement with and care for Darryl. Dustin also argues that the court should have addressed Darryl's best interests with regard to each parent separately before revoking their fundamental rights to parent.

The trial court found it was in Darryl's best interests to avoid further delay and move forward with adoption due to Dustin's high likelihood of relapse, the quick passage of time, and the importance of permanency for Darryl. Recognizing Jane's and Dustin's emotional connections with Darryl, the court found that the bond had been severely and negatively affected by poor choices and drug addictions, as shown by Darryl's change in behavior following the failed home visit. The bond between parent and child is an appropriate factor to consider when addressing the child's best interests.[21]

---

[20]    (...continued)
child's age or needs; (2) the amount of effort by the parent to remedy the conduct or the conditions in the home; (3) the harm caused to the child; (4) the likelihood that the harmful conduct will continue; and (5) the history of conduct by or conditions created by the parent.

AS 47.10.088(b). The best interests factors listed in the statute are not exclusive and the trial court does not need to accord a particular weight to any given factor. *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.,* 234 P.3d 1245, 1263-64 (Alaska 2010).

[21]    *See Karrie B. ex rel. Reep v. Catherine J.,* 181 P.3d 177, 187 (Alaska
(continued...)

The trial court considered this bond here, but it also considered a number of other appropriate factors in the face of overwhelming evidence that it would be best for Darryl if Jane's and Dustin's parental rights were terminated. We affirm the trial court's finding.

**CONCLUSION**

We AFFIRM termination of Jane's and Dustin's parental rights to Darryl.

---

[21]    (...continued)
2008).