NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| CHARLES V., | ) | |
| | ) | Supreme Court No. S-16575 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-14-00320 CN |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| STATE OF ALASKA, DEPARTMENT | ) | AND JUDGMENT* |
| OF HEALTH & SOCIAL SERVICES, | ) | |
| OFFICE OF CHILDREN'S SERVICES, | ) | No. 1667 – February 14, 2018 |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Catherine M. Easter, Judge.

Appearances:  J. Adam Bartlett, Anchorage, for Appellant. Kathryn Vogel, Assistant Attorney General, Anchorage, Jahna Lindemuth, Attorney General, Juneau for Appellee. Rebecca L. Karstetter, Anchorage, Guardian Ad Litem.

Before:  Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

## I.    INTRODUCTION

Charles V.[1] appeals the superior court's order terminating his parental rights to his daughter, Ann, who is an Indian child as defined by the Indian Child Welfare Act

---

*    Entered under Alaska Appellate Rule 214.

[1]    Pseudonyms are used to protect the family's privacy.

(ICWA).[2]  Charles argues that the superior court erred in finding that the Office of Children's Services (OCS) made the active, but unsuccessful, efforts to prevent the breakup of his family that ICWA requires before his parental rights could be terminated. We affirm the order terminating his parental rights because the superior court's finding satisfies the requirements of ICWA and our Child in Need of Aid (CINA) Rules.

## II.    BACKGROUND

Charles V. and Cathy D. are the parents of Ann, who is an Indian child.[3] Charles and Cathy had separated before Ann's birth in November 2013, and Charles had moved to Florida.  After Ann's birth Cathy signed a delegation of parental powers[4] and placed Ann in her cousin's care.[5]  After receiving a report that Cathy might try to remove Ann from her cousin's care, OCS filed a non-emergency petition in July 2014 to adjudicate Ann as a child in need of aid under AS 47.10.011 (1) (abandonment), (9) (neglect), and (10) (substance abuse).  Neither parent attended the probable cause hearing.  It is unclear from the record whether Cathy received notice; Charles could not be reached and did not have notice.  The court found probable cause that Ann was a child

---

**2**    25 U.S.C. §§ 1901-1963 (2012).  ICWA establishes "minimum Federal standards for the removal of Indian children from their families and [for] the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture."  25 U.S.C. § 1902.

**3**    *See* 25 U.S.C. § 1903(4).

**4**    A delegation of parental powers creates a limited power of attorney.  *See* former AS 13.26.020 (1972) (current version at AS 13.26.051 (2016)) (amendment creating new statute authorizing delegation of parental powers over a minor at AS 13.26.066).

**5**    Cathy's older children were in OCS custody as a result of a previous CINA case.  To avoid the risk that Ann would be placed in OCS custody, Cathy arranged for her cousin to have custody of Ann soon after her birth.

in need of aid and granted the petition. A few weeks later Charles contacted OCS expressing a desire to have custody of Ann, and OCS referred Charles for the necessary paternity testing. A September 2014 lab report established his paternity. Because Charles was living in Florida, OCS requested a home study from its Florida counterpart to assess Charles's home so he could potentially take custody of Ann.

Cathy stipulated that Ann was a child in need of aid in October 2014. Charles contested the determination. An adjudication hearing was held in January 2015; Charles returned to Alaska to attend and to try to get custody of Ann. The court adjudicated Ann a child in need of aid under AS 47.10.011 (1) (abandonment), (9) (neglect), and (10) (substance abuse). The findings for abandonment and neglect applied to Charles and the habitual use of an intoxicant applied to Cathy. A month after the hearing OCS created a case plan for Charles. The case plan referred Charles for a substance abuse assessment, drug testing, anger management classes, and to the Cook Inlet Tribal Council (CITC) Father's Journey parenting classes. The case plan listed the goal for Ann as adoption.

In August 2015 the court held a permanency hearing. The court disapproved OCS's permanency report's recommendation that Ann be adopted because of Charles's progress in his case plan, his regular visits with Ann, and his 17 negative drug tests. The court noted that Charles had also completed the CITC Father's Journey program, a second parenting class that was not required by the case plan, and a substance abuse assessment. The court therefore rejected OCS's permanency plan and ordered that the primary goal of the plan be changed to reunification.

Charles continued to address the issues on his case plan, visit his daughter, and work with OCS until December 2015. But at a status hearing in February 2016, OCS reported that in December Charles had arrived for a visit with Ann, informed OCS

he was moving back to Florida, and then walked out of the visit before he saw Ann. Charles's lawyer reported that he had been unable to contact Charles for several weeks.

In March 2016 OCS filed a petition to terminate Charles's and Cathy's parental rights; a termination trial was held in December 2016. By the time of the termination trial Charles had not seen Ann in a year, and she had been in OCS custody for 28 months. Neither parent attended the termination trial.

The court credited Charles for his work with OCS for most of 2015 to address the issues identified in his case plan, but it noted that he had disengaged completely from OCS and Ann in December 2015 when he said he needed to return to Florida. OCS later determined that he had not left Alaska, but was in jail after pleading guilty to domestic assault. The court acknowledged that Charles had made a few phone calls to OCS to set up a visit with Ann in August 2016 but had been unsuccessful in arranging any visits. The court ultimately found that Charles had failed to re-engage with OCS and with Ann, thereby destroying his relationship with his daughter, who had just turned three.

At the close of trial the court found that OCS had met its burden of proof on all relevant findings;[6] that Ann was a child in need of aid under AS 47.10.011(1)

---

[6]    CINA Rule 18(c) (Termination of Parental Rights) provides in relevant part:

> Before the court may terminate parental rights, the Department must prove: (1) by clear and convincing evidence that (A) the child has been subjected to conduct or conditions described in AS 47.10.011 and (i) the parent has not remedied the conduct or conditions in the home that place the child at substantial risk of harm; or (ii) the parent has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk

(continued...)

(abandonment); and that termination of Charles's and Cathy's parental rights was in Ann's best interests. Charles appeals, arguing that the superior court erred in finding that OCS made active efforts to prevent the breakup of his family.

## III. STANDARD OF REVIEW

"Whether OCS made active efforts as required by ICWA is a mixed question of law and fact."[7] "We review a superior court's findings of fact for clear error."[8] Whether a superior court's findings satisfy the requirements of the CINA and ICWA statutes and rules is a question of law we review de novo.[9] "Active efforts must be proven by clear and convincing evidence."[10]

---

[6]     (...continued)
so that returning the child to the parent would place the child at substantial risk of physical or mental injury . . . and . . . (B) in the case of an Indian child, that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful; and . . . (4) in the case of an Indian child, by evidence beyond a reasonable doubt, including the testimony of qualified expert witnesses, that continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child.

[7]     *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 270 (Alaska 2011) (quoting *Dale H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 235 P.3d 203, 210 (Alaska 2010)).

[8]     *Id.* at 269 (quoting *Dale H.*, 235 P.3d at 209).

[9]     *Id.* at 270 (quoting *Dale H.*, 235 P.3d at 210).

[10]    *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1108 (Alaska 2011).

## IV. DISCUSSION

### The Superior Court Did Not Err In Finding OCS Made Active Efforts To Prevent The Breakup Of The Indian Family.

"Before terminating parental rights to an Indian child, the trial court must find by clear and convincing evidence that OCS made active, but unsuccessful, efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family."[11] "Our concern is not with whether the State's efforts were ideal, but with whether they crossed the threshold between passive and active efforts."[12]

The superior court found OCS had made active efforts by referring Charles and Cathy to numerous services, including anger management classes, parenting classes, and drug treatment programs. With respect to Charles, the court noted that after almost a year of successful visitations with Ann, Charles walked out of a scheduled visit and effectively ended all communication with OCS. The court acknowledged that although he had made a brief attempt to contact OCS in the summer of 2016, Charles and OCS had been unable to schedule visits with Ann since December 2015. Therefore at the time of the termination trial Charles had not visited his daughter for more than a year. The court also found that Charles had failed to remedy his substance abuse and anger management issues, citing his new domestic assault conviction in 2016. The court found that Charles's (and Cathy's) conduct amounted to abandonment, had destroyed the parent/child relationship with their now three-year-old daughter, and that their continued custody of their child was likely to result in serious emotional or physical damage to the child.

---

[11] *Sylvia L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 343 P.3d 425, 432 (Alaska 2015) (citing 25 U.S.C. § 1912(d); CINA Rule 18(c)(2)).

[12] *Pravat P.*, 249 P.3d at 272.

Charles argues that OCS's failure to follow up with him after he walked out of his scheduled visit in December 2015 or to schedule visitation during the summer of 2016 constituted a lack of active efforts. We disagree and conclude that OCS's efforts during the entirety of the case support the superior court's active efforts finding. Although the record demonstrates some communication problems between Charles and OCS, and Charles's work to remedy the issues identified in his case plan in 2015, the evidence supports the superior court's active efforts finding. Charles's arguments ignore our case law that "the trial court may consider all services provided during the family's involvement with OCS; it need not focus on a distinct period of time."[13] OCS's and Charles's consistent cooperation throughout 2015 demonstrates that OCS was providing active efforts to reunify the family. And the court may consider a parent's level of cooperation with OCS's efforts.[14] A parent's willingness to cooperate with OCS is relevant to determining whether the state has met its active efforts burden.[15] Charles's abrupt exit, lack of visitation, and six months of no contact with OCS effectively canceled out the impressive progress he had made during 2015 to reunite with his daughter.

Charles's argument focuses on OCS's failure to schedule visitation during the summer of 2016 or to follow up with him after his abrupt departure in 2015. However, we have held that "periods of inactivity are not fatal to a finding of active

---

[13] *Sylvia L.*, 343 P.3d at 432; *see Pravat P.*, 249 P.3d at 271.

[14] *See Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1269 (Alaska 2008); *E.A. v. State, Div. of Family & Youth Servs.*, 46 P.3d 986, 990 (Alaska 2002).

[15] *See Wilson W. v. State, Office of Children's Servs.*, 185 P.3d 94, 101 (Alaska 2008).

efforts where OCS's participation has been active 'in its entirety.' "[16] While it is unfortunate that Charles and OCS were not able to schedule visitation in summer 2016, it is not fatal to an active efforts finding given OCS's other significant efforts over the entirety of the case. OCS scheduled visits for Charles in January 2016 (which he did not attend) after he left the scheduled December visit, and made numerous fruitless attempts to contact Charles throughout 2016. The record supports the superior court's determination that active efforts had been made "to provide remedial services and rehabilitative programs designed to prevent the breakup of this Indian family."[17]

## V. CONCLUSION

We AFFIRM the superior court's order terminating Charles's parental rights.

---

[16]     *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1109 (Alaska 2011) (quoting *Maisy W.*, 175 P.3d at 1268).

[17]     *See* CINA Rule 18(c)(2)(B).