NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KEVIN H., | ) | |
| | ) | Supreme Court No. S-18022 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 3PA-16-00204/ |
| v. | ) | 00205 CN |
| | ) | |
| STATE OF ALASKA, DEPARTMENT | ) | MEMORANDUM OPINION |
| OF HEALTH & SOCIAL SERVICES, | ) | AND JUDGMENT* |
| OFFICE OF CHILDREN'S SERVICES, | ) | |
| | ) | No. 1868 – December 29, 2021 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: Jason A. Weiner, Jason Weiner & Associates, P.C., Fairbanks, for Appellant. Kimberly D. Rodgers, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for Appellee. Rachel Levitt, Assistant Public Advocate, Palmer, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem. Ali G. Wykis, Kawerak, Inc., Anchorage, for Native Village of White Mountain.

Before: Winfree, Chief Justice, Maassen, Carney, Borghesan, and Henderson, Justices.

---

\* Entered under Alaska Appellate Rule 214.

## I.    INTRODUCTION

A father appeals the superior court's grant of the Office of Children's Services's (OCS) second petition to terminate his parental rights, arguing that OCS failed to make active efforts to prevent the breakup of his family.  Because the evidence supports the court's factual findings and the court correctly applied the law, we affirm the termination of parental rights.

## II.    BACKGROUND

Kevin H. and Renee S. are the parents of two young children, Hattie and Opal.[1]  The children are "Indian children"[2] as defined by the Indian Child Welfare Act (ICWA).[3]  OCS took custody of the girls in September 2016 after one was hospitalized following a suspected incident of physical abuse while in Renee's custody.  Though it recognized that Kevin had not endangered the children, OCS placed the children in foster care instead of with Kevin because OCS had concerns about his history of substance abuse and other alleged safety risks.

OCS created case plans for both parents, which required them to obtain and comply with substance abuse and mental health assessments and to participate in parenting classes.  OCS also provided a wide array of services to the children, including private play therapy for Hattie.  But after a year OCS concluded that neither parent was

---

[1]    Pseudonyms are used for all family members.

[2]    *See* 25 U.S.C. § 1903(4).

[3]    25 U.S.C. §§ 1901-1963.  ICWA establishes "minimum Federal standards for the removal of Indian children from their families and [for] the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture." 25 U.S.C. § 1902.

making enough progress to return the children, and it filed a petition to terminate their parental rights in October 2017.

A termination trial was held over the course of four days in June and July 2018. The superior court denied the petition to terminate Kevin's parental rights, finding that OCS had failed to prove that the children were subject to harm or substantial risk of harm due to him rather than Renee.[4] The court concluded that, although there was evidence of Kevin's use of alcohol (including a DUI conviction) and frequent use of marijuana, "[t]he legal, recreational use of intoxicants is not a valid basis for termination of parental rights, particularly when there is no evidence of substance abuse or of use while caring for the children."

The court also found that OCS had failed to make active efforts to reunify Kevin with his daughters. The court found that OCS failed to actively assist Kevin with finding housing and employment (both of which he obtained on his own). It also determined OCS had done little to try to improve Kevin's parenting skills and attachment with his children, citing OCS's failure to implement suggestions from Kevin's psychologist and OCS's termination of visits between Kevin and the children. Although OCS had initially stopped visits between Hattie and Kevin on her therapist's recommendation due to her reaction to visits, OCS never tried to address these issues to reinstate visitation. And OCS never provided any reason for stopping Kevin's visits with Opal.

The court ordered OCS to comply with AS 47.10.086's reasonable reunification efforts requirements and ICWA's active efforts requirements, and ordered OCS to establish visitation plans for Kevin and the children. The court also held six

---

[4]     Renee relinquished her parental rights and does not participate in this appeal.

status hearings between April 1, 2019 and February 3, 2020 to "keep abreast of the issues."

OCS met with Kevin to update his case plan and provide additional services. These included helping him make and keep track of visits and appointments with service providers and offering to help with transportation and paperwork.

OCS arranged for weekly therapeutically-supervised visitation between Kevin and the children, as well as individual therapy for both girls. Opal began refusing visits and the therapeutic visitation supervisors refused to continue them. OCS took into account Kevin's and his Tribe's concerns that he was not getting enough visits with either girl; it increased his visits with Hattie and looked for options to reinstate visits with Opal.

Kevin's participation in substance abuse treatment and screening, mental health counseling, parenting classes, and therapeutically-supervised visitation proved to be uneven and sporadic. He was charged with an alcohol-related DUI in July 2020.

OCS filed a second petition to terminate Kevin's parental rights in July 2019. OCS alleged that he had not made substantial progress toward reunification with his children or working on his case plan and he had not demonstrated the behavioral change required to provide safe and stable care for his children.

After an eight-day trial in November and December 2020, the superior court terminated Kevin's parental rights. It found that Hattie and Opal were in need of aid under AS 47.10.011(10) due to Kevin's substance abuse.[5] The court found clear and

---

[5] AS 47.10.011 lists twelve bases upon which to determine a child is in need of aid. Subsection (10) allows a trial court to find a child in need of aid if the parent "has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the
(continued...)

convincing evidence that Kevin had failed within a reasonable time to remedy the conduct or conditions that placed the children at substantial risk of physical or mental injury. The court noted that Kevin had continued to use alcohol and marijuana during a large portion of the case and that his July 2020 DUI demonstrated that he "does not have his substance use under control." The court also determined that Kevin's ability to parent and absorb parenting education was substantially impaired by his diagnosed "substance misuse," which created a substantial risk of harm to his children.

The court found that OCS had proven beyond a reasonable doubt, including through expert opinions, that returning the children to Kevin was "likely to result in serious emotional and physical damage to [them]." Besides his substance abuse issues, the court found that, despite "outstanding therapeutic services" for almost a year to improve his relationships with the girls and referral to a "gold standard" of parenting classes, Kevin "has failed to demonstrate an understanding of his children's needs and has failed to establish healthy parent-child relationships with them." The court determined that termination of Kevin's parental rights and permanency through adoption by their foster mother was in the children's best interests.

The court found clear and convincing evidence that OCS had made active efforts at reunification and these efforts had proven unsuccessful. These efforts included "repeated support and assistance in identifying and obtaining services such as mental health counseling, substance abuse treatment, and multiple parenting classes," referrals for psychological evaluation and urinalysis, "repeated offers of transportation assistance," "assistance to identify available housing," and assistance to acquire a driver's license. OCS also arranged "nearly a year of therapeutic visitation with his

---

⁵ (...continued)
child."

daughters with an expert mental health clinician . . . designed to provide [him] and his daughters with support to repair and enhance their relationships," as well as "other family contact through in-person and virtual visitation." Kevin's daughters were also provided mental health services to support their needs during efforts at reunification.

Kevin appeals only the superior court's factual findings and legal conclusion that OCS made active efforts to reunify his family.

## III. STANDARD OF REVIEW

"Whether [OCS] complied with the 'active efforts' requirement of [ICWA] is a mixed question of law and fact."[6] We review "the superior court's findings for clear error, but we review de novo whether those findings satisfy the requirements of the CINA rules and ICWA."[7] "[F]indings are clearly erroneous if a review of the entire record in the light most favorable to the prevailing party leaves us with a definite and firm conviction that a mistake has been made."[8]

## IV. DISCUSSION

ICWA requires that a "party seeking to effect a . . . termination of parental rights to[] an Indian child . . . [prove] that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the

---

**6** *Jude M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 394 P.3d 543, 550 (Alaska 2017) (second alteration in original) (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

**7** *Sam M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 731, 736 (Alaska 2019) (quoting *Philip J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 314 P.3d 518, 526 (Alaska 2013)).

**8** *Marcia V. v. State, Off. of Child.'s Servs.*, 201 P.3d 496, 502 (Alaska 2009).

Indian family and that these efforts have proved unsuccessful.'"[9]  Current Bureau of Indian Affairs regulations define active efforts as "affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family."[10]  We have held that active efforts are determined "on a case-by-case basis because 'no pat formula' exists for distinguishing between active and passive efforts."[11]  Generally, passive efforts are "where a plan is drawn up and the client must develop his or her own resources towards bringing it to fruition"; active efforts exist where "the state caseworker takes the client through the steps of the plan,"[12] such as by helping the parents "identify appropriate programs and complete the necessary paperwork to apply" or "connect[ing] them to other resources" rather than simply providing referrals.[13]

Kevin's sole argument on appeal is that OCS failed to make active efforts because OCS "failed its core duty to encourage, maintain, and support visitation, attachment and bonding" between him and his children and instead it "actively minimized and marginalized" his ability to attach and bond with his children.

---

[9]     25 U.S.C. § 1912(d); *see also* 25 C.F.R. § 23.120(a).  Furthermore, "[a]ctive efforts must be documented in detail in the record." 25 C.F.R. § 23.120(b).

[10]    25 C.F.R. § 23.2.

[11]    *Philip J.*, 314 P.3d at 527 (quoting *A.A. v. State, Dep't of Fam. & Youth Servs.*, 982 P.2d 256, 261 (Alaska 1999)); *see also* 25 C.F.R. § 23.2 ("Active efforts are to be tailored to . . . circumstances of the case . . . .").

[12]    *Pravat P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 249 P.3d 264 (Alaska 2011) (quoting *Dale H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 235 P.3d 203, 213 (Alaska 2010)).

[13]    *Bill S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 436 P.3d 976, 982 (Alaska 2019).

Kevin argues first that the court made erroneous findings about whether OCS actually provided services that could facilitate reunification. He then asserts that the court erroneously determined those factual findings amounted to active efforts as required by ICWA. OCS disagrees, arguing that the evidence supporting the court's findings is "enough to dispel any notion that OCS was only passively promoting family reunification" and that Kevin's arguments either "take facts out of context" or focus on efforts that OCS was not required to make. OCS argues that it was Kevin's "fail[ure] to internalize and consistently apply" the recommendations from service providers and classes and "failure to make lasting behavioral changes" that prevented reunification.

**A.    The Superior Court Did Not Clearly Err By Finding That OCS Provided Appropriate Services.**

Kevin argues that the court clearly erred when it found OCS had made active efforts because OCS "fail[ed] to encourage and assist [Kevin's] visitation, attachment and bonding with his children." Kevin does not dispute that OCS provided the services the court listed, but instead points to OCS's failure to provide them in the way he believes would have been best and alleges that OCS "erected roadblocks" and "fatally undermined" the reunification process. Kevin effectively asks us to reweigh the evidence before the superior court.

"Conflicting evidence is generally insufficient to overturn the superior court, and we will not reweigh evidence when the record provides clear support for the superior court's ruling."[14] The record before the superior court provides clear support; it did not clearly err by finding that OCS provided appropriate services that were reasonably tailored to Kevin's and his daughters' needs.

---

[14]    *Maisy W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 175 P.3d 1263, 1267 (Alaska 2008).

To promote bonding and attachment between Kevin and his daughters, OCS enrolled the girls in private play therapy to address their trauma, arranged therapeutic visitation between Kevin and his children supervised by parenting and child psychology experts, and increased visitation at the request of Kevin and the Tribe. And although OCS's expert testified that the number of visits Kevin had with the girls was at the lower end of what was desirable, it was adequate.

While OCS has a duty to make active efforts, it also has reasonable discretion to tailor the case plan and services to those it deems best suited for a family, with the best interests of the child in mind.[15] "Although OCS's efforts as a whole must be 'active,' we review its individual treatment and rehabilitation decisions for reasonableness."[16] OCS is not required to provide referrals to specific programs a parent might request[17] and it "has discretion to prioritize which services should be provided to a parent based upon the issues identified in [their] case."[18] OCS's choices need only be reasonable, not perfect.[19]

---

[15] *See, e.g.*, *Bob S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 400 P.3d 99, 106-07 (Alaska 2017) (holding no error in finding appropriate exercise of OCS discretion where child sent to out-of-state residential treatment and no visitation allowed with father due to father's sex offender risk and child's extreme behavioral issues).

[16] *Addy S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-17257, 2019 WL 3216807, at *6 (Alaska July 17, 2019) (citing *Philip J.*, 314 P.3d at 529).

[17] *Philip J.*, 314 P.3d at 529.

[18] *Demetria H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 433 P.3d 1064, 1071 n.25 (Alaska 2018).

[19] *Sherman B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*,
(continued...)

The evidence before the superior court showed that OCS's efforts were aimed at promoting attachment. OCS provided reasoned explanations for the choices it made to help reunify Kevin with his daughters. For example, OCS explained that visits were supervised because of concerns that Kevin might still be using marijuana or alcohol, that he was still driving without a license, and that he had recently relapsed and committed a DUI. To address concerns about Kevin's parenting ability and the girls' anxious attachment and not feeling safe in his presence, OCS arranged to have the visits supervised by therapists and looked for ways to address these issues such as through signing the family up for child-parent psychotherapy.[20] A caseworker testified to hoping that after participating in the services Kevin would improve his ability to visit safely with the girls, so that he could have unsupervised visits. And OCS continued Kevin's visits with the girls even after the therapeutic visitation supervisor recommended that the visits stop.

The record supports the superior court's finding that the services OCS provided were aimed at promoting bonding and attachment between Kevin and his daughters to allow him to be safely reunited with them. The gaps or flaws Kevin identified in OCS services are not sufficient to show that OCS erected "roadblocks" to reunification or to undermine the court's factual finding that the services were

---

[19]    (...continued)
290 P.3d 421, 432 (Alaska 2012).

[20]    The family remained on the wait list and did not have the opportunity to engage in joint psychotherapy sessions.

appropriate.[21]  The superior court did not clearly err when it determined that OCS provided appropriate services to Kevin.

### B.    The Superior Court Did Not Err By Concluding That OCS Made Active Efforts.

Kevin argues that the court erred when it concluded that the efforts OCS made amounted to active efforts.  After reviewing de novo the superior court's application of the law to its factual findings, we conclude that it did not err.

Kevin challenges a single aspect of OCS's overall efforts, arguing that OCS "failed at one of its core duties, maintaining and assisting [him] in improving his attachment and bonding with his children."  He specifically asserts that because OCS did not provide additional services that he would have preferred in addition to those the court found had been provided, OCS's efforts cannot meet the legal requirement of active efforts.  Kevin argues that he would have benefitted from a bonding assessment, consultation with the girls' therapists, visits at different locations, and more visits.  Even if Kevin is correct that such additional services would have been helpful,"the superior court may consider 'the state's involvement *in its entirety*' in evaluating active efforts."[22]

We have found active efforts where OCS provided services very similar to those provided to Kevin, including the formulation of a case plan, arranging visitation (including increased visitation at a parent's request), and helping a parent obtain services

---

[21]    *See, e.g.*, *Damon W. v. State , Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-16739, 2018 WL 1357357, at *5 (Alaska Mar. 14, 2018) (OCS decision not to provide parent assistance with housing was reasonable under circumstances and therefore not "fatal to an 'active efforts' finding").

[22]    *Philip J.*, 314 P.3d at 528 (Alaska 2013) (emphasis added) (quoting *Lucy J. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 244 P.3d 1099, 1114 (Alaska 2010)) (affirming active efforts finding despite father identifying lapses by OCS, noting "superior court [is] not required to make particular findings as to . . . each component of the case plan").

such as substance abuse assessments, hair follicle testing and urinalyses, parenting classes, and psychological evaluations.[23] The services OCS provided to both the children and Kevin to improve their bonding and attachment exceed the threshold required to meet the active efforts requirement; the superior court noted they were "some of the highest quality services [it] has seen in a CINA case."[24]

OCS's exercise of its discretion to identify and prioritize services is reviewed only for reasonableness.[25] Restrictions on the frequency or manner of visitation, if within reason and tailored to the circumstances of the particular family, can still meet the active efforts requirement.[26] We have held that active efforts were made

---

[23] *Julian F. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-17060, 2019 WL 1057397, at *4 (Alaska Mar. 6, 2019).

[24] *Cf. Addy S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-17257, 2019 WL 3216807, at *4-6 (Alaska July 17, 2019) (affirming active efforts finding, although expert testified that OCS services were not suited for mother's mental disability and weekly visitation was not sufficient, because OCS had exercised reasoned discretion in its choices and mother failed to cooperate). *But see id.* at *10 (Carney, J., dissenting) (arguing OCS did not meet active efforts because of failure to tailor services to mother's disability).

[25] *Id.* at *6; *see also Louisa M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-17592, 2020 WL 6606348 at *6-7, (Alaska Nov. 12, 2020) (affirming active efforts despite OCS refusal to place children with mother at long-term residential treatment program because reasoned explanation given for decision and OCS provided other services including family therapy, contact plans and case plans, assistance with transportation, and supervised visitation).

[26] *See, e.g., Chiara R. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-15798, 2015 WL 5309242, at *2 (Alaska Sept. 9, 2015) (affirming active efforts though mother argued that visitation provided — joint visitation with the father, therapeutically supervised visits, and visits by telephone — limited her ability to bond with child, given OCS stated rationale for restrictions).

in cases involving a range of visitation types, from twice weekly phone calls[27] to monthly therapeutic visitation.[28]  Kevin has not shown that weekly visits with his children were so inadequate that OCS's efforts were not active.[29]

Finally, we have held that a parent's engagement with services is relevant to OCS's active efforts.[30]  For the majority of the four years during which OCS had custody of the children, Kevin continued to use marijuana and alcohol, refused to engage consistently in therapy, failed to internalize lessons and skills taught in parenting classes, and missed many classes and urinalysis appointments.  The superior court was entitled to consider Kevin's failure to engage consistently with OCS and the services identified on his case plan when it found that active efforts were made.  The court did not err by finding that OCS made active efforts to reunify Kevin's family.

## V. CONCLUSION

We AFFIRM the superior court's order terminating Kevin's parental rights.

---

[27]    *See Julio A. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-17603, 2020 WL 4497830, at \*3 (Alaska Aug. 5, 2020).

[28]    *See Denny M. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 365 P.3d 345, 351-52 (Alaska 2016).

[29]    Kevin's argument that the services provided to improve his bonding with the girls were insufficient overlooks the services OCS provided to promote the girls' bonding with him.  OCS provided an array of services to Opal and Hattie to assist them with processing their past trauma and developing an attachment with Kevin.  Services provided to other members of the family can be part of the active efforts analysis if they are relevant to reunifying the parent and child.  *See, e.g.*, *Kelly C. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, No. S-16356, 2017 WL 3122391, at \*6 (Alaska July 19, 2017) (evaluating services provided to both mother and daughter in active efforts analysis).

[30]    *Bill S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 436 P.3d 976, 983 (Alaska 2019).