NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

GAVIN F., )
) Supreme Court No.: S-18797
Appellant, )
) Superior Court Nos.:
v. ) 1KE-20-00024/00025 CN
) (Consolidated)
STATE OF ALASKA, DEPARTMENT )
OF FAMILY AND COMMUNITY ) MEMORANDUM OPINION
SERVICES, OFFICE OF ) AND JUDGMENT*
CHILDREN'S SERVICES, )
) No. 2024 – April 24, 2024
Appellee. )
)

Appeal from the Superior Court of the State of Alaska, First Judicial District, Ketchikan, Katherine H. Lybrand, Judge.

Appearances: Katrina Larsen, Katrina Larsen, LLC, Ketchikan, for Appellant. Mary Ann Lundquist, Senior Assistant Attorney General, Fairbanks, and Treg Taylor, Attorney General, Juneau, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

The father of two children in OCS custody spent many years struggling with substance abuse and periodic incarceration. In the year and a half before his

---

\* Entered under Alaska Appellate Rule 214.

termination trial he completed substance abuse treatment and experienced only two documented relapses. The superior court found that the father's conduct had placed his children at risk of harm. It also found that he had not remedied his conduct within a reasonable time in light of the children's needs. Accordingly, the court terminated the father's parental rights. The father now appeals, arguing that the superior court clearly erred. Seeing no clear error, we affirm.

## II. FACTS AND PROCEEDINGS

Gavin and Anna F. are the parents of Alexa and John F.[1] Alexa was born in October 2011. John was born in April 2013.

The Office of Children's Services (OCS) has taken custody of Alexa and John on two separate occasions — once in 2013 and once in 2021. This case pertains to the second occasion, but facts related to the first case are relevant to the superior court's decision to terminate Gavin's parental rights.

### A. Substance Abuse And Incarceration During First OCS Case

Gavin used a variety of drugs, including heroin, methamphetamine, prescription opioids, and cocaine. He eventually completed residential substance abuse treatment in 2007 and later reported staying sober until 2013.

In March 2013 the police confronted Gavin moments after he had received a package of heroin through the mail. Soon afterwards OCS took temporary custody of Alexa and John and placed them with their grandparents. In July Gavin participated in a substance abuse assessment with Akeela,[2] which recommended level 3.5 inpatient treatment.[3] However, Gavin did not enter inpatient treatment until 2016. In the

---

[1]   We use pseudonyms to protect the parties' privacy.

[2]   Akeela is a healthcare provider that offers residential and outpatient addiction treatment services. *About Akeela*, AKEELA, https://akeela.org/about-akeela/ (last visited Apr. 3, 2024).

[3]   Level 3.5 care consists of clinically managed high-intensity residential services.

meantime, he was convicted of misconduct involving a controlled substance and sentenced to 24 months in jail with 18 months suspended and three years of probation. Gavin violated the conditions of his probation several times, leading the court to eventually revoke his probation and impose his suspended sentence.

Gavin completed inpatient treatment in 2016 after his release. In 2017, after the children had spent about four years living with their grandparents, OCS placed the children with Gavin for a trial home visit. Gavin later estimated that he had been incarcerated for more than half of this first OCS case, including "most" of 2016.

## B. Relapse And Additional Criminal Convictions, Renewed OCS Involvement

In March 2018 Gavin returned to treatment and reported having encountered "a bump in the road." He disclosed that he had relapsed on methamphetamine and had been arrested for trespassing. He also explained that he faced eviction from his apartment. In August 2018 Gavin told the professional supervising him on pretrial release that he had been sober again for around two months and "ha[d] control of his issue." But in May 2019 he had a positive urinalysis (UA) for methamphetamine.

In February 2019 Gavin pled guilty to a harassment charge. In July he was charged with theft.[4] After the theft offense, the court released Gavin on pretrial bail conditions, including substance abuse testing and alcohol monitoring through daily breath tests.

In February 2020 OCS opened a new case. OCS became involved because both parents continued to be arrested for probation violations in connection with substance abuse, leaving the children's needs unaddressed.

Gavin's case plan referred him for a new substance abuse assessment and random testing. In August 2020 he completed a new assessment with Akeela. Gavin

---

[4] He would later plead guilty to theft in the second degree, a class C felony.

reported using methamphetamine around every three months during the previous few years. He reported having abstained from opiates for the previous four years by taking Suboxone, but admitted that he had previously used opiates daily for a period of 10 years. The assessment report indicated that Gavin had been incarcerated 12 times in the past year for missing his scheduled breathalyzer tests. Akeela determined that Gavin met criteria for stimulant, alcohol, and opioid use disorders, and recommended level 3.5 residential treatment.

In October 2020 Anna was arrested. Gavin was incarcerated at the time, leaving no one to care for the children. OCS petitioned for temporary custody of the children and placed them back with their grandparents.

Gavin's theft sentence included probation. Gavin's probation conditions required him to receive a new integrated behavioral health assessment, complete recommended treatment, abstain from drug and alcohol use, and submit to drug testing.

In March 2021 the superior court adjudicated the children in need of aid. Gavin stipulated to a finding that he was unable to meet the children's needs under AS 47.10.011(2) because he was incarcerated.[5]

In April Gavin completed a new assessment. The assessment indicated that he had recently relapsed on heroin, with his last use in March 2021. He would later substantiate this relapse at trial.

In June Gavin entered a residential treatment program in Anchorage. In August Gavin was unsuccessfully discharged from the program. The director told Gavin's probation officer that Gavin was removed because he "obsessed" over his anxiety medication, which upset other patients.

---

[5] Alaska Statute 47.10.011(2) provides that the court may find a child in need of aid if it finds by a preponderance of the evidence that the parent "is incarcerated, the other parent is absent or has committed conduct or created conditions that cause the child to be a child in need of aid under this chapter, and the incarcerated parent has not made adequate arrangements for the child."

In October Gavin tested positive for methamphetamine. He had been released from custody the previous day, and he admitted before taking the UA that he would be positive. He reported that he had used drugs offered to him while he was in custody.

## C. Treatment And Apparent Recovery

Gavin's probation conditions included random drug tests and his UAs were negative for the next several months. During this period he obtained an updated assessment and applied for several residential treatment programs.

At a February 2022 probation appointment Gavin's UA was negative, but he admitted to taking more than his prescribed dosage of Suboxone. His probation officer counted the remaining Suboxone and contacted Gavin's doctor. The doctor advised that the count of remaining Suboxone was consistent with Gavin's prescribed dosage.

Later that day Gavin, driving with a suspended license, drove his car into a ditch and then failed to report to probation as directed by the responding officer. The probation office filed a petition to revoke probation based on the prescription misuse, driving with a suspended license, and failure to report as directed.

A few days later, Gavin entered residential treatment again. He successfully completed the program in March 2022 and was recommended additional level 1.0 care. Gavin's discharge paperwork indicated that he last used illicit substances in October 2021.

Following the program, Gavin, his probation officer, and his doctors made a case plan that included treatment, meetings, and sessions. The probation office also began requiring Gavin to bring his prescription drugs into his appointments for inspection.

For the next several weeks, Gavin's UAs were positive only for prescribed drugs, apart from one test for which the probation records indicate only that the result was "negative" and one test that was excused by the probation officer. In May 2022

the probation office reported that the count of Gavin's medicine showed more Suboxone and less amphetamine (now prescribed) than expected. But Gavin's UA results were consistent with his prescriptions.

In that same month Gavin had another assessment with Akeela. The assessor reiterated Gavin's substance abuse diagnoses and recommended level 2.1 treatment, expressly disagreeing with the previous level 1.0 recommendation. The assessment asserted that: "[Gavin] reports that he feels good about his sobriety, however it should be noted the majority of the time that he has been sober has been in a residential setting or incarcerated and even during the time that he was incarcerated he was using."

Gavin continued to provide UAs without incident, but in June he was arrested for failing to report for a test, and then in September he was arrested for failing to give a UA sample. Gavin later testified that he sometimes missed UA appointments because he has trouble focusing as a result of his attention-deficit/hyperactivity disorder (ADHD). He ultimately decided to serve the few weeks remaining on his sentence rather than continue on probation.

After serving the remainder of his sentence, Gavin was unconditionally discharged from probation and released from jail on December 6, 2022. He testified that he was incarcerated for more than four months in 2022 and more than ten months in 2021.

**D.    Termination Proceedings And Contemporaneous Drug Testing**

Before his release from custody, OCS had created a case plan for Gavin that included UA testing in the "colors" program.[6] Gavin arranged a meeting with his OCS caseworker on the day he was released from custody. The termination trial began

---

[6]    The "colors" program is a process for random drug testing in which each participant is assigned a color and advised to call a phone line every day. If a participant's color is chosen, he or she must complete a test that day.

a few days later. The trial was held over six days in December 2022 and March 2023. At the time of trial, the children had been outside their parents' care for around six years. Alexa was eleven years old and John was nine years old.

At the end of December 2022 or beginning of January 2023, Gavin took a UA and a hair follicle test. But the results of the tests were inconclusive because the caseworker did not have Gavin's updated prescription list. In the beginning of January, Gavin sent a letter to his OCS caseworker in which he revoked his consent to drug testing. The letter asserted:

> I have paid my debt to soc[ie]ty and have decided that I will no longer do hair fol[l]icle tests or the colors mandatory drug testing. I volunteered to do this and I am now rescinding my consent to voluntary drug testing, without a court order. I am tired of you using my p[re]scriptions against me.

In a subsequent meeting with his caseworker, Gavin offered to do UAs if OCS would call him rather than use the "colors" process in which he was required to call in himself to determine whether he would be drug tested. Gavin later testified that he sent the letter because (1) he was already taking UAs for his doctors, (2) his ADHD prevented him from remembering to call OCS, and (3) he felt unsupported by OCS.

When Gavin testified at trial in March he said that he had completed a new assessment with Akeela in January and began outpatient treatment in February. A letter from Akeela dated March 2 confirmed that Gavin was "in compliance" with its outpatient program. Gavin also testified that he had taken monthly UAs for his doctor and other drug tests through Akeela, and that he had recently signed updated releases of information for OCS. The OCS caseworker disputed that Gavin had a release of information with Akeela and testified that Akeela would not share the results of Gavin's recent UAs.

OCS called Karen Morrison as an expert witness on child welfare and social work. OCS also admitted into evidence an expert report written by Morrison.

Morrison testified that John and Alexa would likely suffer serious physical or emotional harm if returned to Gavin's or Anna's care. She expressed that moving the children despite their six years with their grandparents could lead to emotional and mental harm.

Morrison also testified about how a lengthy history of substance abuse may affect recovery. She explained that it was a "concern" when a parent has a long history of substance use. She elaborated that it is "very difficult" to know how long a period of demonstrated sobriety is necessary to warrant returning children to the parent. She opined that "the longer history that the parent has of substance use . . . the more time they would need." She maintained that a parent with an extensive history of addiction "would need to demonstrate sobriety over a long period of time."

Towards the end of the trial, Morrison testified on cross-examination that Gavin had not demonstrated consistent sobriety because he had not submitted to consistent testing after his December 2022 release from jail. She noted that the hair follicle test and UAs from December 2022 and January 2023 were inconclusive and that Gavin had removed himself from OCS drug testing. She pointed out that missed drug tests create an appearance that the individual is using and then deliberately avoiding detection. However, she conceded that she could not point to a positive test.

The superior court terminated Gavin's and Anna's parental rights. The superior court found that Gavin had placed the children in need of aid as a result of his repeated incarceration and his substance abuse. The court further found that Gavin had remedied his incarceration, but had failed to remedy his substance abuse and, moreover, had failed to do so within a reasonable time. The court found that "[t]here is no evidence that [Gavin] used illicit drugs since October 2021 or misused his prescriptions since March 2022." Nonetheless the court determined that (1) Gavin had not demonstrated sustained sobriety because most of his recovery occurred in the controlled environment of treatment, probation, or jail; (2) Gavin's history showed a "clear pattern" of repeated relapses and incarcerations due to substance abuse; (3) Gavin may have misused his

prescriptions while on probation because the records of some of his UAs show negative results rather than positive results for only prescribed drugs; (4) even if the court did not discount Gavin's current length of sobriety based upon the controlled environment in which it was achieved, his sobriety was still "too fragile" given his previous history of use; and (5) Gavin had not remedied his conduct within a reasonable time in light of his children's needs and best interests and the length of time they had lived outside of his care.

After the court issued its termination order, Gavin belatedly filed his written closing argument and asked the court to reconsider its decision. Gavin characterized the argument that his drug use impacted his parenting as "speculation" that was not tightly tied to evidence. He also disputed OCS's characterization of his prospects for future sobriety.

The court granted reconsideration to address Gavin's written closing argument, but ultimately reaffirmed its prior termination order. The court rejected Gavin's assertion that evidence did not show his drug use harmed the children, noting that his drug use is what initially led to his incarceration. The court also noted that his "repeated relapses resulted in a lack of stability within the home, impacted the children's educational and emotional development, and . . . resulted in him being unavailable to parent the children."

With respect to whether Gavin had remedied his conduct, the court maintained its prior findings that he (1) had not remedied his conduct within a reasonable time, and (2) had not remedied his substance abuse despite his recent progress. The court reiterated that he had achieved only around four months of sobriety outside of a controlled setting.

Gavin appeals, challenging the superior court's failure-to-remedy finding.

## III. STANDARD OF REVIEW

Whether a parent failed to remedy the conduct that placed his or her child in need of aid is a factual question we review for clear error.[7] "Findings of fact are clearly erroneous if a review of the entire record in the light most favorable to the party prevailing below leaves us 'with a firm and definite conviction that a mistake has been made.' "[8] "Conflicting evidence is generally insufficient to overturn the superior court, and we will not reweigh evidence when the record provides clear support for the superior court's ruling."[9]

## IV. DISCUSSION

Gavin argues that the termination order must be reversed because the superior court clearly erred by finding he failed to remedy his substance abuse and to do so within a reasonable time. But we see no clear error in the court's finding that even if Gavin had established sobriety, he failed to do so within a reasonable time.

The superior court may not terminate parental rights unless it finds by clear and convincing evidence[10] that the parent:

> (A) has not remedied the conduct or conditions in the home
>     that place the child at substantial risk of harm; or

---

[7] *Charles S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 780, 788 (Alaska 2019).

[8] *Barbara P. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 234 P.3d 1245, 1253 (Alaska 2010) (quoting *Brynna B. v. State, Dep't of Health & Soc. Servs.*, 88 P.3d 527, 529 (Alaska 2004)).

[9] *Maisy W. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 175 P.3d 1263, 1267 (Alaska 2008) (internal footnote omitted).

[10] "Clear and convincing evidence is 'evidence that is greater than a preponderance, but less than proof beyond a reasonable doubt.' " *Theresa L. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 353 P.3d 831, 838 (Alaska 2015) (quoting *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 187 (Alaska 2009)). To be clear and convincing the evidence must "produce[] in the trier of fact a firm belief or conviction about the existence of a fact to be proved." *Id.* (quoting *Bigley*, 208 P.3d at 187).

(B) has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury.[11]

When deciding whether the parent has failed to remedy the conduct that placed the child at risk, the court may consider "any fact relating to the best interests of the child, including":

(1) the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs;

(2) the amount of effort by the parent to remedy the conduct or the conditions in the home;

(3) the harm caused to the child;

(4) the likelihood that the harmful conduct will continue; and

(5) the history of conduct by or conditions created by the parent.[12]

For purposes of deciding whether the parent has remedied conduct within a "reasonable time," that period is "statutorily defined as 'a period of time that serves the best interests of the child, taking in account the affected child's age, emotional and developmental needs, and ability to form and maintain lasting attachments.' "[13]

When deciding these questions the superior court is "entitled to rely on a parent's documented history of conduct as a predictor of future behavior."[14]   In *Sherry R. v. State, Department of Health & Social Services, Division of Family & Youth*

---

[11]     AS 47.10.088(a)(2).

[12]     AS 47.10.088(b)(1)-(5).

[13]     *Charles S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 780, 789 (Alaska 2019) (quoting AS 47.10.990(30)).

[14]     *Sherry R. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 74 P.3d 896, 903 (Alaska 2003).

*Services*, the superior court found that a mother who had a long history of substance abuse and who had relapsed after treatment a number of times had not remedied her conduct despite maintaining sobriety in the year before trial.[15] We affirmed, expressly noting that the superior court was permitted to view the mother's recent sobriety in light of her "long history of substance abuse."[16]

But the predictive force of a parent's long history of substance abuse is not boundless. In *Charles S. v. State, Department of Health & Social Services, Office of Children's Services,* the superior court found that a father who had previously engaged in "decades" of substance abuse had not remedied his conduct despite successfully completing inpatient and outpatient treatment and remaining sober during the two years before trial.[17] We reversed, holding that the superior court had clearly erred.[18] We distinguished the father's situation from that of the mother in *Sherry R.*, noting that the father (1) had been sober for twice as long, (2) only attempted treatment once and had been sober since, and (3) did not have a history of repeated relapse.[19] Although we agreed that superior courts may rely on a parent's documented history to predict future behavior, we cautioned that "other factors may also be relevant."[20]

In Gavin's case the superior court found that by the time of the termination trial Gavin had not remedied his cycle of substance abuse that had made him unable to parent his children for much of their childhood. The court also found that even if he had remedied his substance abuse, he had not done so within a reasonable time because

---

[15]     *Id.* at 902-03.

[16]     *Id.* at 903.

[17]     442 P.3d at 789.

[18]     *Id.* at 789-90.

[19]     *Id.* at 789.

[20]     *Id.*

his sobriety was "too fragile" and his children had spent the majority of their childhoods living with their grandparents while waiting for him to recover.

Gavin argues that he "remedied the conduct and conditions that had posed a risk of harm to the children such that the risk of reincarceration and risk of harm to the children was no longer 'substantial.' " He emphasizes that he had only two relapses in the roughly 18 months before the end of the termination trial and describes these as minor bumps on the road to recovery. Criticizing the superior court's reliance on the *Sherry R.* decision, he suggests the court focused only on the most recent period of sobriety without accounting for the minimal nature of these relapses.

We disagree. The superior court accounted for the particular circumstances of Gavin's case.

First, it found his sobriety "fragile" in light of his historical pattern of recovery and relapse. The court expressly found that "[Gavin]'s history shows a clear pattern of repeated relapses and incarcerations due to substance abuse." The court noted that he has recovered before, "only to relapse, commit new crimes, and become reincarcerated."

Second, the court found that Gavin's recent sobriety had been established primarily within controlled environments. It found that he had "three months of sobriety outside of a controlled environment and outside of probation's external controls," concluding that this was "not sustained sobriety." The superior court found this was an important difference from the parent in the *Charles S.* case, who had remained sober for two years outside of a controlled environment.[21]

Third, the court found that Gavin's sobriety was not established soon enough in light of the fact that his children had been in OCS custody for over two years in this case and for many years in the previous case.

---

[21] *Id.*

Gavin's argument largely ignores these findings, which support the superior court's ultimate finding that he had not established sobriety within a reasonable time. We cannot say that the court clearly erred in finding that it was unreasonable to make his children, who had spent much of their lives in OCS custody waiting for him, wait longer for him to show sustained sobriety without the structure of prison, probation, or inpatient treatment.

Gavin also argues that the fact that he ended his relationship with Anna and was living with his mother undercuts the superior court's finding. But these facts do not show the superior court clearly erred by finding his sobriety was fragile and that his children could not wait longer for him to show sustained sobriety.

For the foregoing reasons, we conclude that the superior court did not clearly err by finding that Gavin failed to remedy his harmful conduct within a reasonable time.

## V.    CONCLUSION

We AFFIRM the superior court's order terminating Gavin's parental rights.